# DOW AND CONDON, INC. *v.* BROOKFIELD DEVELOPMENT CORPORATION
## (SC 16774)

Sullivan, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued February 13—officially released November 11, 2003

*Glenn T. Terk,* for the appellant (plaintiff).

*Lisa Kelly Morgan,* for the appellee (defendant).

*Eugene A. Marconi* filed a brief for the Connecticut Association of Realtors, Inc., as amicus curiae.

*Opinion*

VERTEFEUILLE, J. This appeal arises from an action in which the plaintiff, Dow and Condon, Inc., doing business as Colliers, Dow and Condon, sought to recover a real estate broker's commission in connection

with a lease entered into by Federal Express Corporation (Federal Express) as tenant and the defendant, Brookfield Development Corporation, as landlord. After a trial to the court, judgment was rendered for the defendant on the ground that the plaintiff was not entitled to recover a commission because it had violated General Statutes (Rev. to 1997) § 20-325a (a)[1] and § 20-328-8a (e) of the Regulations of Connecticut State Agencies[2] by agreeing to share its commission with a real estate broker not licensed in this state. The plaintiff appeals from the trial court's judgment,[3] claiming, inter alia, that the trial court improperly concluded that it had violated § 20-325a and § 20-328-8a (e) of the regulations. We affirm the judgment of the trial court.

The following facts and procedural history guide our resolution of the plaintiff's claims on appeal. In July, 1996, Stein and Company (Stein), a real estate brokerage company located in Chicago, Illinois, and the plaintiff entered into a cobrokerage agreement. At the time

---

[1] General Statutes (Rev. to 1997) § 20-325a (a) provides: "No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after October 1, 1971, to recover any commission, compensation or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter." All references to § 20-325a in this opinion are to the 1997 revision.

[2] Section 20-328-8a (e) of the Regulations of Connecticut State Agencies provides: "No licensee shall offer, promise, allow, give, pay or rebate, directly or indirectly, any part or share of the licensee's commission or compensation arising or accruing from any real estate transaction to any person who is engaging in the real estate business and who is not licensed as a real estate broker or real estate salesman at the time the real estate broker or real estate salesman performed the acts or rendered the services for which the licensee offers, promises, allows, gives, pays or rebates such commission or compensation."

[3] The plaintiff appealed to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the agreement was executed and at all other relevant times, the plaintiff was licensed to engage in the real estate business in this state. Stein, however, was not so licensed.[4] The cobrokerage agreement pertained to the acquisition of a site for a Federal Express facility in the Hartford area. Pursuant to the terms of the agreement, the plaintiff was to serve as the local representative for Federal Express for site evaluation and selection and Stein was to handle communications with Federal Express and negotiations with prospective landlords. The agreement further provided that if Federal Express entered into a build-to-suit lease, the plaintiff would receive 20 percent of the commission and Stein would receive 80 percent.

In January, 1997,[5] Stein signed a commission agreement with the defendant. The commission agreement referred to property located in the town of Windsor for a Federal Express facility and provided that a commission in the amount of $408,000 would be paid in certified funds or by wire transfer to Stein's cobroker, the plaintiff. One half of the commission was to be paid on the date of the closing of the financing for the project and the balance was to be paid upon occupancy of the property.

On July 29, 1997, the defendant, as landlord, and Federal Express, as tenant, entered into a build-to-suit lease (lease) for the land located in Windsor. The lease was negotiated by an employee of Stein and not by the plaintiff. Pursuant to the terms of the lease, the defendant was to construct and lease to Federal Express a facility in Windsor on land, which was identi-

---

[4] Diane Cisek, the corporate real estate service director and senior vice president for Stein, testified at trial that Stein was a licensed real estate brokerage in Illinois at the time of trial. There was no evidence presented, however, as to when Stein had obtained its license.

[5] The commission agreement, although executed on January 24, 1997, was dated December 31, 1996.

fied in an exhibit attached to the lease, to be purchased by the defendant. Section 33 of the lease provided in part that "[e]ach party represents to the other that the only broker used in connection with this agreement is [Stein], whose commission [the defendant] Landlord shall pay." Section 1 (b) of the lease allowed for the amendment of the lease and provided: "At any time prior to Landlord's purchase of the Land [particularly identified in exhibit A attached to the lease], Landlord and Tenant may agree to substitute another site on which to construct the Improvements. In such event, this Lease will be amended to incorporate the legal description of the new site, which new site shall become the [land that is the subject of this lease]."

The defendant ultimately was unable to acquire financing for the project and, therefore, was unable to purchase the Windsor property that was the subject of the lease. The proposal to develop the Federal Express facility on that particular property in Windsor therefore eventually was abandoned.

The defendant subsequently entered into discussions with Federal Express regarding an alternative site that was located in the town of Windsor Locks. The property was owned by Old County Road LP I, a Connecticut limited partnership. In order to facilitate the purchase, development and leasing of the property to Federal Express, a new entity, Brookfield Windsor Locks Limited Partnership (limited partnership), was formed.[6] Early in 1998, the limited partnership purchased the property from Old County Road LP I.

On October 23, 1997, at Stein's request, a representative of the plaintiff sent a letter to Frank A. Fitzgerald,

---

[6] Frank F. Fitzgerald, an attorney representing the defendant, and John Shea each owned 50 percent of the defendant's stock. Fitzgerald and Shea also became partners in the limited partnership, each owning a 15 percent interest.

an attorney for the defendant, seeking payment of $204,000, one half of the claimed commission, under the terms of the lease. Fitzgerald responded with a letter that acknowledged that the total commission due on the Windsor property, the originally chosen site, was $408,000, but made no payment at that time.

The lease between Federal Express and the defendant subsequently was amended on or about February 20, 1998. The amendment changed the identity of the landlord by substituting the limited partnership for the defendant, and also changed the site that was the subject of the lease to the new location in Windsor Locks.

In July, 1998, the limited partnership sent a check to Stein in the amount of $204,000 for the first half of the commission due under the terms of the lease. A letter accompanying the check provided that the balance of the commission would be paid in accordance with the commission agreement that had been signed by the defendant. Stein shared the commission payment with the plaintiff in accordance with the cobrokerage agreement. The $204,000 balance of the commission, however, never was paid.

The plaintiff then brought this action against the defendant, seeking a judgment for the remaining balance of the commission. The case was tried to the court, which rendered judgment for the defendant. In its memorandum of decision, the trial court determined that: (1) there was a binding contract between the plaintiff and the defendant; (2) the plaintiff was the proper party to bring this action; and (3) the plaintiff had earned the commission. The trial court nevertheless concluded that the plaintiff was not entitled to recover the balance of the commission because it had violated both § 20-325a (a) and § 20-328-8a (e) of the regulations by agreeing to share a real estate commission with Stein, an unlicensed broker that illegally had engaged

in the real estate business in this state. This appeal followed.

The plaintiff claims on appeal that the trial court improperly: (1) allowed the defendant to amend its answer and special defenses on the day that trial was scheduled to begin; and (2) determined that the plaintiff had violated § 20-325a (a) and § 20-328-8a (e) of the regulations.[7] The defendant raises several alternate grounds for affirmance, including a claim that the trial court lacked subject matter jurisdiction because the plaintiff lacked standing to bring this action.

We conclude that the plaintiff had standing to bring this action. We further conclude that the trial court properly granted the defendant's request to amend its answer to the plaintiff's complaint. Lastly, we conclude that the trial court properly determined that the plaintiff's agreement to share the commission with Stein violated § 20-328-8a (e) of the regulations and, therefore, it would violate the public policy underlying the entire statutory scheme to allow the plaintiff to recover a commission from the defendant. Accordingly, we affirm the judgment of the trial court.

I

Ordinarily, we would consider the defendant's alternate grounds for affirmance only after finding merit in

---

[7] The plaintiff in its brief separately addressed the claims that the trial court improperly determined that the plaintiff had violated § 20-325a (a) and § 20-328-8a (e) of the regulations. In its memorandum of decision, the trial court answered "yes" to the question, "Did the plaintiff violate [General Statutes] § 20-325a (a) and Regulation[s] of Connecticut State Agencies § 20-328-8a (e)?" The court apparently concluded that the plaintiff had violated § 20-325a (a) because it believed that the real party in interest in the action filed by the plaintiff was not the plaintiff, but Stein. We reach our conclusion that the plaintiff cannot recover a commission by a slightly different route that requires us to consider the plaintiff's compliance with the statutory scheme as a whole. Accordingly, we consider the plaintiff's separate claims pertaining to § 20-325a (a) and § 20-328-8a (e) of the regulations together.

at least one of the claims raised on appeal. "[O]nce the question of lack of jurisdiction of a court is raised, [however, it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Citations omitted; internal quotation marks omitted.) *Castro* v. *Viera*, 207 Conn. 420, 429, 541 A.2d 1216 (1988). We therefore consider as a threshold issue the defendant's claimed alternate ground for affirmance that the trial court lacked subject matter jurisdiction because the plaintiff did not have standing to bring this action.

"It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347, 780 A.2d 98 (2001). "[W]hen standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the [party] has a legally protected interest [that may be remedied]." (Internal quotation marks omitted.) *In re Jonathan M.*, 255 Conn. 208, 219, 764 A.2d 739 (2001). "It is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . . ." (Internal quotation marks omitted.) *Tomlinson* v. *Board of Education*, 226 Conn. 704, 718, 629 A.2d 333 (1993). "[W]hether a party has standing, based upon a given set of facts, is a question of law for the court . . . and in this respect the label placed on the allegations by the

parties is not controlling." (Citation omitted.) *Ganim* v. *Smith & Wesson Corp.*, supra, 348.

The defendant claims that the plaintiff lacks standing to bring this action because it was not a party to the commission agreement between Stein and the defendant. The plaintiff counters that it has standing because the various transactional documents entered into by the parties, considered in their entirety, created a consistent and enforceable agreement between the plaintiff and the defendant. We need not consider at this point in our analysis whether those documents, considered together, created an enforceable contract because we conclude that the plaintiff was an intended third party beneficiary under the commission agreement and therefore had rights under the agreement sufficient to confer standing to bring this action.

"The law regarding the creation of contract rights in third parties in Connecticut is . . . well settled. In *Knapp* v. *New Haven Road Construction Co.*, 150 Conn. 321, 325, 189 A.2d 386 (1963), we quoted *Colonial Discount Co.* v. *Avon Motors, Inc.*, 137 Conn. 196, 201, 75 A.2d 507 (1950), and reaffirmed that [t]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. . . . Although we explained that it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary; *Knapp* v. *New Haven Road Construction Co.*, supra, 326; we emphasized that the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be, under our

rule, because the parties to the contract so intended. Id. . . .

"The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of certainty in enforcing contracts. That is, each party to a contract is entitled to know the scope of his or her obligations thereunder. That necessarily includes the range of potential third persons who may enforce the terms of the contract. Rooting the range of potential third parties in the intention of both parties, rather than in the intent of just one of the parties, is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would ultimately be his contract obligee." (Citations omitted; internal quotation marks omitted.) *Grigerik* v. *Sharpe*, 247 Conn. 293, 311–12, 721 A.2d 526 (1998).

In the present case, the intent of the parties could not be clearer. The commission agreement between the defendant and Stein expressly stated that "[c]ommissions are payable in certified funds or by wire transfer to [Stein's] co-broker, [the plaintiff]." Thus, the defendant clearly intended to assume a direct obligation to pay the commission to the plaintiff. To establish standing, the plaintiff does not need to show that the commission agreement was enforceable under the governing regulatory law or that it was consistent with and not superseded by the other contract documents. See *In re Jonathan M.*, supra, 255 Conn. 219 (in determining question of standing, court does not consider merits of claim). Rather, the plaintiff needs to show only that it is a proper party to bring an action against the defendant. We conclude that, as a third party beneficiary of

the commission agreement, the plaintiff is a proper party to bring this action against the defendant.[8]

The defendant's reliance on *Dow & Condon, Inc.* v. *Anderson*, 203 Conn. 475, 481, 525 A.2d 935 (1987), in support of its argument to the contrary is misplaced. In that case, the plaintiff, a licensed real estate broker, brought an action against, inter alia, the defendant property owner seeking a commission on the ground that it had procured a ready, willing and able buyer for the defendant's property. The plaintiff had an oral cobrokerage agreement with another party, the principal of a licensed brokerage firm that, in turn, had a written commission agreement with the defendant property owner. Id., 477, 480. After determining that the plaintiff had no contract with the defendant property owner, the trial court concluded that there was no probable cause to sustain the plaintiff's claims and granted the defendant property owner's motion to dissolve an ex parte attachment that had been placed on its property by the plaintiff. Id., 480. *Dow & Condon, Inc.*, is distinguishable from the present case, however, because the defendant property owner in that case was not a party to any contract that clearly indicated that the property owner had intended to assume a direct obligation to the plaintiff. Moreover, the claim in that case was not that the plaintiff lacked *standing* to bring an action

[8] The trial court stated in its memorandum of decision that "[i]t has neither been alleged nor proven" that the plaintiff was a third party beneficiary of the commission agreement. It also stated, however, that "[a]s for being a third party beneficiary, [the plaintiff] could only be a third party beneficiary based upon a commission agreement which itself violates the statute and [the] regulation. If a third party beneficiary, the plaintiff would be a beneficiary of an agreement that on its face is illegal because Stein is an unlicensed broker in Connecticut and, therefore, [is] prohibited from entering into the commission agreement . . . ." Thus, the court clearly considered and rejected this proposition. As we have noted, however, the possibility that the commission agreement could be determined to be unenforceable as violative of public policy does not deprive the plaintiff of standing to bring an action to attempt to enforce it.

against the defendant, but that the plaintiff could not prevail in its lawsuit. Accordingly, *Dow & Condon, Inc.*, has no bearing on our resolution of the jurisdictional claim in the present case.

## II

We next consider the plaintiff's claim that the trial court abused its discretion by granting the defendant's last minute request to amend its answer to assert the special defense that the plaintiff had violated § 20-328-8a (e) of the regulations. We disagree.

The following additional facts are necessary to our resolution of this issue. The defendant filed its answer and special defenses on October 25, 2000. On November 20, 2000, the plaintiff filed its reply and the case was placed on the trial list. On October 25, 2001, the day that trial was scheduled to begin, the defendant filed an amended answer and special defenses in which it raised a new special defense that the cobrokerage agreement violated § 20-328-8a (e) of the regulations. After hearing oral arguments on whether to allow the amendment, the court decided to permit it. On that same day, and continuing into the next, the case was tried to the court.

"Our standard of review of the plaintiff's claim is well settled. While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not

disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion." (Citations omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 128, 788 A.2d 83 (2002). "If an amendment is allowed at trial and the opponent wants to raise an abuse of discretion issue on appeal, he should immediately move for a continuance in the trial in order to defend against the new issue." (Internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 134, 807 A.2d 519, cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003), citing *Smith* v. *New Haven*, 144 Conn. 126, 132–33, 127 A.2d 829 (1956). Under certain circumstances, the trial court may allow an amendment to plead an additional special defense even after judgment has entered. See *Ideal Financing Assn.* v. *LaBonte*, 120 Conn. 190, 195–96, 180 A. 300 (1935).

The plaintiff argues that it was prejudiced by the trial court's granting of the defendant's request to amend its pleadings to include the special defense alleging a violation of § 20-328-8a (e) of the regulations on the day that trial was scheduled to begin because the amendment prevented the plaintiff from presenting a well researched rebuttal of that defense. We note first, however, that the plaintiff did not seek a continuance in order to prepare its response to the newly raised defense. Moreover, the new affirmative defense did not inject any new factual issues into the case, but instead raised a purely legal issue. The plaintiff had the opportunity to address that issue fully in its posttrial brief to the court, which was filed nearly one month after trial. Finally, we note that the trial court would have been obligated to consider the effect of the regulation on the enforceability of the cobrokerage agreement even if it had not been raised as a special defense. See *Genovese*

v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 480 n.6, 628 A.2d 946 (1993) ("[i]t is plain error for a trial court to fail to apply an applicable statute, even in the absence of the statute having been brought to its attention by the parties").

We do not condone the practice of waiting until the day of trial to raise an important legal issue for the first time. Under the circumstances of the present case, however, we conclude that it was well within the trial court's discretion to grant the defendant's request to amend its answer.

### III

The plaintiff's second claim is that the trial court improperly determined that it had violated § 20-325a (a) and § 20-328-8a (e) of the regulations by agreeing to share a commission with Stein, a broker that was not licensed in Connecticut. We conclude that the plaintiff violated § 20-328-8a (e) of the regulations and, therefore, its contract is unenforceable because it violates the public policy underlying the licensing scheme for real estate brokers.

The facts relevant to this claim are undisputed. The plaintiff is a real estate broker licensed in this state. Stein, who is not licensed to engage in the real estate business in this state, engaged in the real estate business in this state by, inter alia, negotiating the lease with the defendant.[9] The defendant agreed to pay a commission

[9] General Statutes § 20-311 (3) provides in relevant part: " 'Engaging in the real estate business' means acting for another and for a fee, commission or other valuable consideration in the listing for sale, selling, exchanging, buying or renting, or offering or attempting to negotiate a sale, exchange, purchase or rental of, an estate or interest in real estate . . . ."

The plaintiff concedes that "[t]here is no dispute that Stein was acting on behalf of Federal Express," that "Stein's involvement has continued with Federal Express," that "Stein is a real estate broker licensed in Illinois," and that "Stein . . . was to oversee the progress and assure the quality of [the plaintiff's] representation, as well as, act as the liaison between [the plaintiff] and Federal Express" with respect to the negotiation of the lease. Moreover, Richard Abo, a licensed real estate broker employed by the

of $408,000 to Stein through the plaintiff, and Stein and the plaintiff agreed to share that commission. Whether these contractual arrangements violated § 20-325a (a) and § 20-328-8a (e) of the regulations is a pure question of law involving the interpretation of the relevant statutory scheme.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity." (Citations omitted; internal quotation

plaintiff who worked on the lease on behalf of the plaintiff, testified at trial that "David Kaman, who was [Abo's] counterpart at Stein, once we had selected the location was doing the direct [lease] negotiations [with the defendant], not [Abo]." Finally, the plaintiff does not dispute that Stein was to receive a fee for these services. Accordingly, the plaintiff does not appear to dispute that Stein's activities fall within the broad definition of "engaging in the real estate business" set forth in § 20-311 (3). Nevertheless, the plaintiff claims that "Stein was not engaging in the real estate business in Connecticut as contemplated under [§ 20-328-8a (e) of the regulations]." The apparent contradiction in these positions may be explained by the plaintiff's argument that § 20-328-8a (e) was intended "to protect [buyers and sellers of real estate] against licensed brokers employing or representing as licensed brokers or salesmen unlicensed persons," and not to prohibit brokerage firms licensed elsewhere from engaging in the type of transaction at issue here. Whatever the explanation for this apparent discrepancy, however, we conclude for reasons set forth more fully later in this opinion that Stein's conduct constituted "[e]ngaging in the real estate business" as that term is defined in § 20-311 (3) and used in § 20-328-8a (e) of the regulations.

marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003).

We begin our analysis with the language of the applicable statute, which provides: "No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after October 1, 1971, to recover any commission, compensation or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter." General Statutes (Rev. to 1997) § 20-325a (a). The plaintiff argues that, under its plain terms, § 20-325a (a) merely prohibits a person who is not licensed as a real estate broker in this state from bringing an action to recover a commission. The plaintiff claims that because there is no dispute that it is a licensed broker, the statute does not prohibit the plaintiff from bringing this action.

We conclude, however, that, although § 20-325a (a) sets forth a necessary condition for filing an action to recover a commission, namely, that the person filing the action be licensed under the provisions of the chapter, compliance with that condition is not, in and of itself, sufficient to permit recovery.[10] As the trial court recognized, compliance with the public policy underlying the entire statutory scheme, including the policy embodied in § 20-328-8a (e) of the regulations, which prohibits the sharing of a commission between a licensed broker and a person engaging in the real estate business in Connecticut without a license, also must be considered in determining whether the plaintiff may recover a com-

---

[10] Thus, we need not consider, as the trial court apparently did, whether the plaintiff had violated § 20-325a (a) because Stein was the real party in interest.

mission. See *Vaszauskas* v. *Vaszauskas*, 115 Conn. 418, 423, 161 A. 856 (1932) ("[i]n case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract"); compare *Barrett Builders* v. *Miller*, 215 Conn. 316, 324, 576 A.2d 455 (1990) ("a person who does not comply with the statutory requirements [of the Home Improvement Act] will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy" [internal quotation marks omitted]). Accordingly, we must determine whether the existence of an agreement in violation of § 20-328-8a (e) of the regulations bars recovery of a commission by a licensed broker in connection with the same transaction.

This court previously has not considered whether a licensed broker may prevail in an action to recover a commission when the evidence establishes that an unlicensed person illegally participated in the transaction. Our research reveals, however, that, in other jurisdictions that have statutory schemes similar to Connecticut's, almost every court that has considered the issue before us has concluded that recovery will not be allowed under these circumstances.[11] Of the cases in

---

[11] See *Meltzer* v. *Crescent Leaseholds, Ltd.*, 315 F. Sup. 142, 146 (S.D.N.Y. 1970) (under New York law, licensed broker cannot recover commission if broker agreed to split commission with unlicensed cobroker), aff'd, 442 F.2d 293 (2d Cir. 1971); *Farragut Baggage & Transfer Co.* v. *Shadron Realty, Inc.*, 18 Ariz. App. 197, 201, 501 P.2d 38 (1972) (licensed broker cannot recover commission from defendant seller for services provided by unlicensed agent); *Firpo* v. *Murphy*, 72 Cal. App. 249, 254–55, 236 P. 968 (1925) (licensed broker cannot recover commission from defendant landlord for services provided by unlicensed employee of broker); *White* v. *Chicago Title & Trust Co.*, 99 Ill. App. 3d 323, 332, 425 N.E.2d 1017 (1981) (licensed broker cannot recover commission for services provided by unlicensed agent); *Thorpe* v. *Carte*, 252 Md. 523, 530, 250 A.2d 618 (1969) (licensed broker cannot recover commission from defendant sellers who agreed to pay part of commission to unlicensed person); *Davis* v. *Jouganatos*, 81 Nev.

which this issue has been considered, the facts of *Thorpe* v. *Carte*, 252 Md. 523, 250 A.2d 618 (1969), most closely resemble those in the present case. In *Thorpe*, the defendant, a licensed real estate broker, entered into a listing agreement with the plaintiff sellers pursuant to which the broker was to receive a commission of 6 percent of the sales price. Id., 524. The sellers subsequently executed a purchase and sale agreement that provided that the commission from the sale of their house would be split between the broker and an individual who was not licensed as a real estate broker or salesman who had introduced the broker to the sellers. The broker was to receive 65 percent of the commission and the unlicensed individual was to receive 35 percent. Id. Although the broker found a buyer for the sellers' property, the sale was not consummated. Id. The broker then brought an action against the sellers for his share of the commission. Id., 524–25. The sellers demurred on the ground that recovery by the broker was prohibited pursuant to a Maryland statute making it unlawful for any real estate broker to pay any compensation to a person other than a licensed real estate broker for services that may be performed only by licensed brokers.

333, 402 P.2d 985, 988 (1965) (under California law, agreement between defendant landowners and plaintiff cobrokers was void in its entirety when one cobroker not licensed); *Frieman* v. *Greaves*, 80 Ohio App. 341, 350, 74 N.E.2d 860 (1947) (stating in dicta that licensed broker cannot recover commission if commission to be shared with unlicensed broker); *Certified Realty Co.* v. *Reddick*, 253 Or. 617, 623–24, 456 P.2d 502 (1969) (under Oregon or Washington law, licensed broker cannot recover commission from defendant seller for services provided by unlicensed employee of broker); *Wasson* v. *Hartt*, 244 S.W.2d 258, 261 (Tex. Civ. App. 1951) (agreement between licensed broker and unlicensed person to divide commission was void and barred recovery of commission by licensed broker from defendant seller); *Kemmerer* v. *Roscher*, 9 Wis. 2d 60, 63, 100 N.W.2d 314 (1960) (joint contract by brokers, one of whom is unlicensed, invalid as to all); but see *Volkmann* v. *Wortham*, 189 S.W.2d 776, 779 (Tex. Civ. App. 1945) (concluding without analysis that fact that licensed broker paid part of commission to unlicensed person did not bar recovery of remainder of commission by licensed broker).

Id., 525. The trial court in *Thorpe* found that "there was nothing of record to indicate that [the broker] had agreed to give any amount to . . . any . . . unlicensed salesman or broker, and concluded that the arrangement with respect to said 35 [percent] of the commission . . . was illegal and [the unlicensed individual] could, of course, not recover a commission in a Court of Law. However, this does not preclude [the broker] from receiving his [percentage of the commission], about which there is no contest . . . ." (Internal quotation marks omitted.) Id., 526. The trial court therefore rendered summary judgment for the broker. Id.

The sellers appealed and the Maryland Court of Appeals reversed the judgment of the trial court. The court stated that "[w]e are now of the firm view that [the broker] cannot recover on the illegal contract entered into to split commissions with [the unlicensed individual] and that a court will not lend its aid to [the broker] in his effort to do so." Id. The court indicated that the fact that the sellers, rather than the broker, had agreed to pay a portion of the commission to an unlicensed individual did not affect the court's determination, because the agreement had the same effect. Id., 528. The court noted that "[w]here the statute involved is (a) one for the protection of the public against incompetence and dishonesty, as is the Maryland statute, and (b) there is a single contract for the payment of real estate commissions in part to an unlicensed person and in part to a licensed person and the licensed person's suit for part of the commission necessarily reveals the statutorily forbidden participation in the deal of an unlicensed person with the consent of the licensee, almost all courts have held that because the contract is illegal the licensed obligee will not be permitted to recover." Id., 530.

Like the Maryland statute at issue in *Thorpe*, our statutory scheme is "one for the protection of the public

against incompetence and dishonesty . . . ."[12] Id. Moreover, the various documents relied on by the plaintiff in the present case in support of its claim that it is owed a commission reveal that the *plaintiff itself* had agreed with Stein to split the commission, in clear violation of the plain language of § 20-328-8a (e) of the regulations. The plaintiff cannot establish its right to recover a commission from the defendant without also establishing that the plaintiff itself had entered into this illegal agreement.[13] The reasoning of *Thorpe* v. *Carte,* supra,

---

[12] "[Section 20-325a] originated as one of ten bills proposed by the Connecticut real estate commission 'to strengthen the real estate industry by strengthening the real estate licensing law and in so doing safeguard the public's interest.' Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1971 Sess., p. 225, remarks of James Carey, executive director of the Connecticut real estate commission." *M.R. Wachob Co.* v. *MBM Partnership,* 232 Conn. 645, 658–59, 656 A.2d 1036 (1995). We note that General Statutes § 20-314 (a) provides that "[l]icenses shall be granted under this chapter only to persons who bear a good reputation for honesty, truthfulness and fair dealing and who are competent to transact the business of a real estate broker or real estate salesperson in such manner as to safeguard the interests of the public." Other subsections of that statute set forth rigorous ethical, educational and experiential requirements for license applicants. See General Statutes § 20-314 (b), (c) and (d). General Statutes § 20-316 provides that a license may be denied to an applicant in accordance with General Statutes § 46a-80, which allows such a denial if the licensing agency determines, after considering the applicant's criminal conviction and its relationship to the occupation, that the applicant is not suitable for the specific business for which the license is sought. General Statutes § 20-320 provides that a license may be suspended or revoked if the licensee engages in certain enumerated unethical, dishonest or statutorily prohibited conduct. General Statutes § 20-324a provides that a person aggrieved by any action of a duly licensed real estate broker or salesperson or an unlicensed employee of a licensed broker involving dishonesty may recover compensation from a real estate guaranty fund.

[13] We reject the argument of the amicus curiae, the Connecticut Association of Realtors, Inc., that "it is illogical to deny a commission claim to a Connecticut licensee based on a written agreement for commission simply because some of that commission *might* be paid to an out-of-state licensee." (Emphasis in original.) There is no issue in the present case as to whether, if the plaintiff were to recover the commission, any portion of it would, in fact, be paid to Stein pursuant to an illegal agreement. The issue is whether an illegal agreement existed and, if so, what effect that has on the plaintiff's rights. This court cannot simply close its eyes to the undisputed evidence that such an illegal agreement exists.

252 Md. 523, therefore, applies all the more strongly in the present case. We are persuaded by that case, as well as by the great weight of authority from other jurisdictions; see footnote 11 of this opinion; that the existence of an illegal agreement to share a commission with an unlicensed person violates public policy and bars the recovery of the commission by a properly licensed broker.

In its brief, the plaintiff argues, however, that, even if a violation of § 20-328-8a (e) of the regulations would bar its recovery of a commission, there was no such violation in this case because the regulation was "meant to protect against licensed brokers employing or representing as licensed brokers or salesmen unlicensed persons," and not to prohibit a "nationally recognized real estate brokerage corporation" that is licensed elsewhere, such as Stein, from representing a large corporate client, such as Federal Express, in this state when it also has contracted for the services of a broker licensed in this state. We disagree. Although we previously have recognized that the requirements for an enforceable written contract set forth in § 20-325a (b) were "aimed primarily at private residential transactions because the kind of sophisticated people who are dealing with commercial and in commercial properties would not need that kind of protection"; (internal quotation marks omitted) *M.R. Wachob Co.* v. *MBM Partnership*, 232 Conn. 645, 659, 656 A.2d 1036 (1995); we never have suggested that the requirement for a license is limited to brokers who deal with unsophisticated individuals, and we see nothing in the language of the relevant statutes or their legislative history to support such a claim. We note that the relevant regulatory language refers to "*any person* who is engaging in the real estate business and who was not licensed as a real estate broker or real estate salesman"; (emphasis added) Regs., Conn. State Agencies § 20-328-8a (e); not just

to employees of licensed brokers.[14] See also General Statutes § 20-325 ("[a]ny person" who engages in real estate business in Connecticut without license may be punished by fine of not more than $1000 or imprisonment for not more than six months or both).

If the licensing statutes did not apply to a foreign broker engaging in the real estate business in this state on behalf of a foreign party, any misconduct by the foreign entity would be beyond the reach of any disciplinary action by the real estate commission and in some cases could even be beyond the reach of Connecticut courts.[15] Nor does the fact that the unlicensed foreign entity was associated with a licensed broker remove the foreign entity from the operation of the licensing statutes. That fact would not prevent the foreign entity from engaging in unethical or illegal conduct in this state. As the trial court noted, if, as characterized

[14] The plaintiff argued at oral argument that § 20-328-8a (e) of the regulations prohibits payment to "any person who is engaging in the real estate business and who was not licensed as a real estate broker or real estate salesman," and does not specify that a person must be licensed in this state in order to receive payment. Within the context of the regulation, however, it is clear that the term "licensee" refers to a person licensed in this state and, accordingly, that the term "licensed" means licensed in this state. See *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 431, 572 A.2d 951 (1990) ("[i]t is a familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance" [internal quotation marks omitted]).

[15] A foreign entity could, for example, require persons with whom it does business in this state to agree to bring an action in the foreign entity's home state. By contrast, General Statutes § 20-317 (b) provides in relevant part that nonresident applicants for a license "shall file an irrevocable consent that suits and actions may be commenced against such applicant in the proper court in any judicial district of the state in which a cause of action may arise or in which the plaintiff may reside, by the service of any process or pleading, authorized by the laws of this state, on the chairperson of the commission, such consent stipulating and agreeing that such service of such process or pleading shall be taken and held in all courts to be as valid and binding as if service had been made upon such applicant in the state of Connecticut. . . ."

by the plaintiff in its brief, a "nationally recognized real estate brokerage corporation" wants to engage in the real estate business in this state, General Statutes § 20-317 provides a means for it to do so legally.

The plaintiff also argues that its agreement with Stein did not violate § 20-328-8a (e) of the regulations because the agreement was within the scope of a policy statement issued by the real estate commission on March 5, 1998, allowing a licensed broker to pay a "referral fee" to an unlicensed person engaging in the real estate business if the person is licensed in another state.[16] This argument fails for a number of reasons. First, the policy statement was adopted after the various agreements at issue in this case had been entered into and there is no indication that the commission intended for the policy to be retroactive. Second, there is no evidence in the record that Stein was licensed in another state at the time that the agreements had been entered into. See footnote 4 of this opinion. Third, it is not entirely clear whether the commission's policy of allowing the payment of a referral fee to a foreign licensee also allows the splitting of a commission when the foreign licensee has not limited his or her conduct to a mere referral of business to a broker licensed in this state, but also has engaged in the real estate business in this state or, if so, whether such a policy would be consistent with the public policy underlying the statutory scheme.[17]

---

[16] The policy statement provided in relevant part: "Section 20-328-8a (e) of the Connecticut real estate regulations prohibits a broker from paying a referral fee to an unlicensed person engaging in the real estate business. In order to meet this license requirement, the person receiving the referral fee can be licensed in either Connecticut or another state." Dept. of Consumer Protection, Connecticut Real Estate Commission (March 5, 1998).

[17] We emphasize that we do not decide in this case whether the payment of a referral fee by a licensed broker to an unlicensed person who has *not* engaged in the real estate business in this state would bar the recovery of a commission by a licensed broker.

We also reject the arguments made by the amicus curiae, the Connecticut Association of Realtors, Inc., that (1) Stein did not engage in the real estate business in this state, but merely acted as the plaintiff's authorized agent in signing the commission agreement, as permitted by § 20-352a (b), and (2) that Connecticut law does not apply to negotiations between Stein, an Illinois company, Federal Express, a Delaware corporation, and the defendant, a Massachusetts corporation. With respect to the first argument, we conclude that, even if Stein merely had been acting as the plaintiff's authorized agent in signing the commission agreement, that would not change the facts that Stein negotiated the lease between Federal Express and the defendant and contracted to share a commission with the plaintiff, which acts clearly were within the core conduct that § 20-328-8a (e) of the regulations and the statutory scheme as a whole are intended to prohibit. With respect to the second argument, none of the parties has raised the claim that Connecticut law does not apply to this transaction. Accordingly, we decline to consider the amicus' conclusory argument to that effect.

We conclude that a violation of § 20-328-8a (e) of the regulations bars recovery of a commission by a licensed real estate broker who has violated the regulation by agreeing to share its commission with an unlicensed party. We further conclude specifically that the plaintiff in this case violated that regulation by agreeing to share its commission with Stein. Accordingly, we conclude that the trial court properly determined that the plaintiff is barred from recovering a commission from the defendant.

Having rejected the plaintiff's claims on appeal, we need not consider the remaining alternate grounds for affirmance raised by the defendant.

The judgment is affirmed.

In this opinion SULLIVAN, C. J., and NORCOTT and KATZ, Js., concurred.

ZARELLA, J., concurring. I agree with the majority's conclusion in this case but write separately only to reaffirm my continuing belief in the plain meaning rule as expressed in my dissenting opinion in *State* v. *Courchesne*, 262 Conn. 537, 597, 618–19, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting).