## TOYKA SIMMONS-COOK *v.* CITY OF BRIDGEPORT ET AL.
### (SC 18013)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and Schaller, Js.

658

Argued November 30, 2007—officially released February 26, 2008

*Thomas J. Weihing*, with whom were *Joshua F. Nessen* and, on the brief, *John T. Bochanis* and *Janice L. Rosenfeld*, for the appellant-appellee (plaintiff).

*Arthur C. Laske III*, assistant city attorney, and *John C. King*, with whom were *John P. Bohannon, Jr.* and, on the brief, *Michele C. Mount*, assistant city attorney, and *Mark T. Anastasi*, city attorney, for the appellees-appellants (defendants).

*Opinion*

ROGERS, C. J. The plaintiff, Toyka Simmons-Cook, brought this action pursuant to General Statutes § 9-329a (a),[1] claiming, inter alia, that the defendant Santa

---

[1] General Statutes § 9-329a provides: "(a) Any (1) elector or candidate aggrieved by a ruling of an election official in connection with any primary held pursuant to (A) section 9-423, 9-425 or 9-464, or (B) a special act, (2) elector or candidate who alleges that there has been a mistake in the count of the votes cast at such primary, or (3) candidate in such a primary who alleges that he is aggrieved by a violation of any provision of sections 9-355, 9-357 to 9-361, inclusive, 9-364, 9-364a or 9-365 in the casting of absentee ballots at such primary, may bring his complaint to any judge of the Superior Court for appropriate action. In any action brought pursuant to the provisions of this section, the complainant shall send a copy of the complaint by first-class mail, or deliver a copy of the complaint by hand, to the State Elections Enforcement Commission. If such complaint is made prior to such primary such judge shall proceed expeditiously to render judgment on the complaint and shall cause notice of the hearing to be given to the Secretary of the State and the State Elections Enforcement Commission. If such complaint is made subsequent to such primary it shall be brought, within fourteen days after such primary, to any judge of the Superior Court.

"(b) Such judge shall forthwith order a hearing to be held upon such complaint upon a day not more than five nor less than three days after the making of such order, and shall cause notice of not less than three days to be given to any candidate or candidates in any way directly affected by the decision upon such hearing, to such election official, to the Secretary of the State, the State Elections Enforcement Commission and to any other person or persons, whom such judge deems proper parties thereto, of the

Ayala, the Democratic registrar of voters for the city of Bridgeport (city), and the defendant Thomas L. Kanasky, Jr., the head moderator for the city's September 11, 2007 Democratic primary, had violated certain election statutes before, during and after the primary.[2] After an expedited hearing, the trial court rendered judgment for the defendants. The plaintiff then filed this appeal[3] claiming that the trial court: (1) applied an

time and place of the hearing upon such complaint. Such judge shall, on the day fixed for such hearing, and without delay, proceed to hear the parties and determine the result. If, after hearing, sufficient reason is shown, such judge may order any voting machines to be unlocked or any ballot boxes to be opened and a recount of the votes cast, including absentee ballots, to be made. Such judge shall thereupon, if he finds any error in the ruling of the election official, any mistake in the count of the votes or any violation of said sections, certify the result of his finding or decision to the Secretary of the State before the tenth day following the conclusion of the hearing. Such judge may (1) determine the result of such primary; (2) order a change in the existing primary schedule; or (3) order a new primary if he finds that but for the error in the ruling of the election official, any mistake in the count of the votes or any violation of said sections, the result of such primary might have been different and he is unable to determine the result of such primary.

"(c) The certification by the judge of his finding or decision shall be final and conclusive upon all questions relating to errors in the ruling of such election official, to the correctness of such count, and, for the purposes of this section only, such alleged violations, and shall operate to correct any returns or certificates filed by the election officials, unless the same is appealed from as provided in section 9-325. In the event a new primary is held pursuant to such Superior Court order, the result of such new primary shall be final and conclusive unless a complaint is brought pursuant to this section. The clerk of the court shall forthwith transmit a copy of such findings and order to the Secretary of the State."

[2] The plaintiff also named as defendants the following: the city; Hector Diaz, the town clerk for the city; Joseph Borges, the Republican registrar of voters for the city; Patricia Howard, the deputy Democratic registrar of voters for the city; Jeffrey B. Garfield, the executive director and general counsel for the state elections enforcement commission; and Warren Blunt, Richard Bonney, Susan Lesko-Kohut, Mary A. McBride-Lee and Clara Watson-Harper, Democratic candidates for the office of city council for the 135th voting district in the city's September 11, 2007 Democratic primary.

[3] The plaintiff originally brought her appeal pursuant to General Statutes §§ 9-325 and 51-199 (b) (5). At the same time that she filed the appeal, she filed in this court a motion to stay court orders and to postpone the primary election pending the appeal. After the appeal was filed, this court determined that it would treat the issues raised in the appeal that had not been certified

improper standard in determining whether the plaintiff was entitled to a new primary election under § 9-329a (b); (2) improperly determined that the result of the election would not have been different but for Ayala's and Kanasky's refusal to allow the plaintiff to have an official counter during a recanvass of the vote; and (3) improperly excluded certain evidence at trial. Thereafter, the defendants filed a cross appeal claiming that the trial court improperly denied their motion to dismiss the plaintiff's complaint. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The plaintiff was one of six candidates for election to the city council for the 135th voting district in the city's September 11, 2007 Democratic primary. After a mandatory recanvass of the primary vote for that office pursuant to General Statutes § 9-445,[4] the defendants Warren Blunt and Richard

to this court by the trial court in accordance with § 9-325 as if they had been brought in an ordinary appeal to this court. See *Bortner* v. *Woodbridge*, 250 Conn. 241, 245 n.4, 736 A.2d 104 (1999) (although direct appeal to this court pursuant to § 51-199 [b] [5] was improper in absence of certified question pursuant to § 9-325, court treated appeal as if it had been filed in Appellate Court and transferred to this court). Accordingly, this court bifurcated the appeal into a certified appeal pursuant to § 9-325 and an ordinary appeal. We then denied the motion to stay in the ordinary appeal; see *Simmons-Cook* v. *Bridgeport*, 284 Conn. 815, 823, 936 A.2d 601 (2007); and dismissed the certified appeal. See *Simmons-Cook* v. *Bridgeport*, 284 Conn. 823, 832, 936 A.2d 605 (2007).

[4] General Statutes § 9-445 provides: "Forthwith after a primary for nomination to a municipal office or for election of members of a town committee, or forthwith upon tabulation of the vote for a state or district office by the Secretary of the State when the plurality of an elected or nominated candidate over the vote for a defeated candidate receiving the next highest number of votes was either (1) less than a vote equivalent to one-half of one per cent of the total number of votes cast at the primary for the office or position but not more than one thousand votes, or (2) less than twenty votes, there shall be a recanvass of the returns of the voting machine or voting machines used in such primary for said office or position unless within one day after the primary, in the case of nomination to a municipal office or for election of members of a town committee, or prior to the time the Secretary of the State notifies the town clerk of state and district offices which qualify for an automatic recanvass, the defeated candidate or defeated candidates, as

Bonney, were determined to have won the nomination. Bonney defeated the plaintiff by two votes.[5]

Fourteen days after the primary, on September 25, 2007, the plaintiff filed a complaint in the Superior Court alleging that, before, during and after the primary, and during the recanvass, Ayala and Kanasky had engaged in conduct that violated various election statutes. Among other alleged violations, the plaintiff claimed that Ayala and Kanasky had denied her request to appoint her representative as an official counter at the recanvass in violation of § 9-445. She further claimed that there had been a mistake in the counting of the vote during the recanvass. In her original complaint, the plaintiff stated that she was bringing the action pursuant to

the case may be, for such office or position file a written statement waiving this right to such recanvass with the municipal clerk in the case of a municipal office or town committee, or with the Secretary of the State in the case of a state or district office. In the case of a state or district office, the Secretary of the State upon tabulation of the votes for such an office shall notify the town clerks in the state or district, as the case may be, of the state and district offices which qualify for an automatic recanvass and shall also notify each candidate for any such office. When a recanvass is to be held the municipal clerk shall promptly notify the moderator, as defined in section 9-311, who shall proceed forthwith to recanvass such returns of the office in question in the same manner as is provided for a recanvass in regular elections, except that the recanvass officials shall be divided equally, as nearly as may be, among the candidates for such office. In addition to the notice required under section 9-311, the moderator shall, before such recanvass is made, give notice in writing of the time and place of such recanvass to each candidate for a municipal office which qualifies for an automatic recanvass under this section. For purposes of this section, 'the total number of votes cast at the primary for the office or position' means in the case of multiple openings for the same office or position, the total number of electors checked as having voted in the primary, in the state, district, municipality or political subdivision, as the case may be. When a recanvass of the returns for an office for which there are multiple openings is required by the provisions of this section, the returns for all candidates for all openings for the office shall be recanvassed. Nothing in this section shall preclude the right to judicial proceedings in behalf of such defeated candidate under any provision of this chapter."

[5] Bonney was determined to have 530 votes and the plaintiff was determined to have 528 votes.

General Statutes § 9-328, which governs contests in general elections, but she later clarified in an amended complaint that she was bringing the action pursuant to § 9-329a. In each complaint, the plaintiff sought orders that: (1) all of the voting machines used in the Democratic primary election be impounded beyond the automatic fourteen day impoundment period provided for in General Statutes § 9-310; (2) no Democratic nominee for the office of city council for the 135th voting district be recognized before the case was resolved; (3) "the votes recounted on the ballots in the 135th [v]oting [d]istrict . . . be voided"; (4) the plaintiff be declared the winner of the Democratic primary for the office of city council for the 135th voting district; (5) a new primary election be held for the office of city council for the 135th voting district; and (6) the ballots cast in the primary election not be examined, unlocked or otherwise inspected except by order of the court.

The trial court ordered an expedited hearing on the matter to be held beginning on October 3, 2007. The trial court also issued an ex parte order that all of the voting machines used in the primary, as well as certain other materials related to the election, be impounded, pending further order by the court.

The expedited hearing concluded on October 15, 2007, and, on October 24, 2007, the trial court issued its decision. In its memorandum of decision, the trial court concluded that Ayala's and Kanasky's denial of the plaintiff's request to appoint her representative as an official counter during the recanvass constituted a " 'ruling' " of an election official within the meaning of § 9-329a. The court further concluded that this ruling violated the requirement of § 9-445 that "the recanvass officials shall be divided equally, as nearly as may be, among the candidates for such office." (Internal quotation marks omitted.) The court ultimately concluded,

however, that the plaintiff had not established: (1) that the results of the primary might have been different if the ruling had been different; or (2) what the outcome would have been if the ruling had been different. Accordingly, the trial court rendered judgment for the defendants and, pursuant to § 9-329a (b), certified its decision to the secretary of the state. Thereafter, upon motion by the defendants, the trial court vacated the order impounding the voting machines.

The plaintiff then filed this appeal. See footnote 3 of this opinion. Thereafter, the defendants filed a cross appeal claiming that the trial court improperly had denied their motion to dismiss the plaintiff's complaint for lack of jurisdiction. The plaintiff claims on appeal that the trial court applied an improper standard in determining whether the improper ruling by Ayala and Kanasky entitled her to a new primary election under § 9-329a (b) because the outcome of the election could not be determined. Specifically, she contends that the trial court improperly rejected her claim that she was entitled to a new election because, as the result of the improper ruling, the outcome of the election could not be determined *reliably*. The plaintiff also claims that the trial court improperly excluded and ignored certain evidence that supported her claim that the results of the election were unreliable.[6] The defendants dispute these claims and claim on cross appeal that the trial court improperly denied their motion to dismiss the complaint for lack of subject matter jurisdiction. We

---

[6] The plaintiff also states in her brief that, "depending upon its ruling on this appeal," this court might need to immediately address the following question: "Does the Superior Court or Supreme Court have authority under . . . § 9-328 to overturn a general election and order a new one based on the voiding of a primary election which chose one of the candidates for the general election?" The plaintiff has not briefed this issue, however, and we therefore deem it abandoned.

reject the plaintiff's claims on appeal and the defendants' claim on cross appeal.

We first address the defendants' claim on cross appeal that the trial court improperly denied their motion to dismiss the complaint because the plaintiff had failed to cite the proper statutory authority for her claim within the fourteen day time period mandated by § 9-329a.[7] This claim is governed by our decision in the related case of *Caruso* v. *Bridgeport*, 285 Conn. 618, 941 A.2d 266 (2008), which was released on the same date as this opinion. The defendants in that case raised an identical claim and we concluded that the trial court properly had denied the motion to dismiss. Id., 630. We adopt the reasoning and result of that decision herein.

The plaintiff's claim on appeal that the trial court applied an improper standard in determining that she was not entitled to a new election is also controlled by our decision in *Caruso* v. *Bridgeport*, supra, 285 Conn. 648. The plaintiff in that case raised an identical claim and we concluded that the trial court applied the proper

[7] Although the parties have not raised the issue in their briefs to this court, there is some question as to whether the defendants were aggrieved by the trial court's decision and, therefore, have standing to raise this claim on appeal. " 'Ordinarily, a party that prevails [at trial] is not aggrieved.' " *Albahary* v. *Bristol*, 276 Conn. 426, 434 n.5, 886 A.2d 802 (2005); see also *King* v. *Sultar*, 253 Conn. 429, 434, 754 A.2d 782 (2000) ("[i]t is well established that the subject matter jurisdiction of the Appellate Court and of this court is governed by [General Statutes] § 52-263, which provides that an aggrieved party may appeal to the court having jurisdiction from the final judgment of the court" [internal quotation marks omitted]). We may treat the defendants' claim, however, as an alternate ground for affirmance. *Albahary* v. *Bristol*, supra, 434 n.5.

"Ordinarily, we would consider the defendant's alternate [ground] for affirmance only after finding merit in at least one of the claims raised on appeal. [O]nce the question of lack of jurisdiction of a court is raised, [however, it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 578–79, 833 A.2d 908 (2003).

standard. Id., 650. We adopt the reasoning and result of that decision herein.[8]

Our decision in *Caruso* also disposes of the plaintiff's claim that the trial court improperly excluded certain evidence relating to her claim that she was entitled to a new primary election because the outcome of the election was unreliable. We rejected an identical claim by the plaintiff in that case and, again, we adopt that reasoning and result herein. See id., 654.

Many of the plaintiff's claims of improperly ignored evidence also were raised by the plaintiff in *Caruso* and were rejected by this court. See id., 653–54. The plaintiff in the present case also contends, however, that the trial court improperly ignored evidence that a voter, Mariali Rodriguez, who had intended to vote for the plaintiff improperly had been prevented from doing so. Rodriguez testified that she had intended to vote for Christopher Caruso, a candidate for the office of mayor, and "everybody who was on that line," including the plaintiff. When she went to her polling place, she was told that she could not vote because her name was not on the voter list. A poll worker tried to call the registrar of voters to determine if Rodriguez was registered, but no one answered the telephone. Rodriguez then went to the office of the registrar of voters in the town hall, where she was told that she was registered and should have been able to vote. The registrar's office also provided Rodriguez with a copy of her registration

---

[8] To the extent that the plaintiff claims that the trial court improperly determined that certain conduct that she characterizes as conscious disregard by Ayala of the governing election statutes did not constitute rulings, this claim also is foreclosed by our decision in *Caruso*. See *Caruso* v. *Bridgeport*, supra, 285 Conn. 630–47. The plaintiff in that case raised substantially identical claims concerning Ayala's actions. We concluded that the alleged actions colorably were rulings, but that the plaintiff could not prevail because there was no evidence that any of the actions had placed the result of the election seriously in doubt. Id., 647–53. We adopt the reasoning and result of that decision herein.

form. The form indicated that Rodriguez previously had been registered to vote under the name of Mariali Castillo. The plaintiff argues that, in reaching its conclusion that the plaintiff had not met her burden of proof under § 9-329a, the trial court failed to consider that, if Rodriguez had been permitted to vote, the result of the election might have been different. We disagree.

"Before setting forth the law governing our resolution of the plaintiff's claims, we review the general principles governing the judiciary's limited role in elections. See *Bortner* v. *Woodbridge*, [250 Conn. 241, 253, 736 A.2d 104 (1999)]. We previously have recognized that, under our democratic form of government, an election is the paradigm of the democratic process designed to ascertain and implement the will of the people. . . . [E]lection laws . . . generally vest the primary responsibility for ascertaining [the] intent and will [of the voters] on the election officials . . . . We look, therefore, first and foremost to the election officials to manage the election process so that the will of the people is carried out. . . . Moreover, [t]he delicacy of judicial intrusion into the electoral process . . . strongly suggests caution in undertaking such an intrusion. . . . Finally, we have recognized that voters have a powerful interest in the stability of [an] election because the ordering of a new and different election would result in *their* election day disfranchisement. . . . [This] background counsels strongly that a court should be very cautious before exercising its power under the [statutes governing election contests] to vacate the results of an election and to order a new election." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Caruso* v. *Bridgeport*, supra, 285 Conn. 637–38.

A plaintiff seeking relief under § 9-329a (a) (1) must establish that, "but for the error in the ruling of the election official . . . the result of such primary might have been different and [the judge] is unable to deter-

mine the result of such primary." General Statutes § 9-329a (b) (3); see also *Caruso* v. *Bridgeport*, supra, 285 Conn. 653. Moreover, the court must be persuaded that "(1) there were substantial violations of the requirements of the statute . . . and (2) as a result of those violations, the reliability of the result of the election is seriously in doubt." (Internal quotation marks omitted.) *Caruso* v. *Bridgeport*, supra, 649. "[A]lthough the underlying facts . . . are to be established by a preponderance of the evidence and are subject on appeal to the clearly erroneous standard . . . the ultimate determination of whether, based on those underlying facts, a new election is called for—that is, whether there were substantial violations of the statute that render the reliability of the result of the election seriously in doubt—is a mixed question of fact and law that is subject to plenary review on appeal . . . ." (Internal quotation marks omitted.) Id., 651.

In the present case, we conclude that Rodriguez' testimony that she was not permitted to vote did not establish that there had been a substantial violation of the election laws by an election official. The testimony indicated only that Rodriguez' name did not appear on the list of voters who were entitled to vote at the polling place where she had attempted to vote. In the absence of any evidence as to the reason for the omission or who was responsible for it, we are unable to ascertain whether there was any official action that colorably constituted a ruling within the meaning of § 9-329a. See id., 646–47 (for purposes of § 9-329a, ruling includes conduct by election official that affects integrity of election process or implicates statutory scheme governing that process). Accordingly, we reject the plaintiff's claim that the trial court improperly ignored Rodriguez' testimony.

The only remaining issue that we must resolve in the present case is the plaintiff's claim that the trial court

improperly determined she was not entitled to a new primary election on the ground that Ayala and Kanasky had refused to appoint her representative as an official counter during the recanvass in violation of § 9-445. The following undisputed facts and procedural history are relevant to our resolution of this claim. The recanvass of the primary vote for the office of city council for the 135th voting district took place on September 17, 2007. The plaintiff asked Jeffrey Tisdale, who had been involved in her campaign, to attend the recanvass with her. Ayala and Kanasky also were present. Four people had been appointed as official counters at the recanvass, including a woman who had been appointed at the request of the plaintiff's opponent, Bonney. Two of the counters were assigned to count absentee ballots and two were assigned to count the ballots cast at the polling places. Tisdale testified that he stated to Ayala that, if Bonney had the right to request an official counter, the plaintiff also should have that right. Tisdale further testified that Ayala told him that it was too late to appoint a counter. When Tisdale objected, Ayala referred him to Kanasky. Tisdale testified that Kanasky told him that there already were enough counters to satisfy state law. Tisdale was allowed, however, to observe the recanvass. Tisdale testified that, on two occasions, he pointed out errors in the absentee ballot count that had favored Bonney, and the errors were corrected.

After all of the absentee and regular ballots had been counted, Tisdale's count differed by two votes from the official count for one of the polling places. Tisdale testified that the official counters agreed to recount those votes. One of the regular ballot counters, Carmen Vargas, testified, however, that Tisdale had stated that he had lost count because he "really wasn't paying attention," and that he had not requested a recount. Kanasky testified that Tisdale's count differed from the

official count because "he failed to understand how you would add up the number of votes based upon the number of ballots." Specifically, Kanasky testified that Tisdale did not understand that a voter could cast a ballot without voting for any candidate for city council. Accordingly, the total number of votes for city council would not necessarily be an exact multiple of the number of ballots.

After determining that the counts of the two official counters were the same, Kanasky decided that a recount was not necessary. Tisdale testified that Kanasky then took the tally sheets for the absentee and regular ballots into a separate room to total them. Kanasky determined that Bonney had defeated the plaintiff by a vote of 530 to 528. According to Tisdale's calculations, however, the plaintiff had defeated Bonney by a vote of 529 to 528.[9] Suzanne Lesko-Kohut, another candidate for city council for the 135th voting district, testified that she also had observed the recanvass and her count also differed from the official count. In an affidavit attached to the complaint, Lesko-Kohut stated that her final count was 528 votes each for Bonney and the plaintiff.

Kanasky testified that, when Tisdale asked to be appointed as an official counter, he told Tisdale that "[t]he statute specifically provides for only two [counters], and we already have two." He testified that this decision was made on the basis of materials provided by the secretary of the state's office concerning recanvass procedures. Those materials stated that recanvass officials included "at least two official checkers of opposing political parties (or opposing sides, in a primary); at least two absentee ballot counters of opposing political

---

[9] Tisdale originally testified at trial that, accordingly to his calculations, the plaintiff had won by a vote of 530 to 528. In an affidavit attached to the complaint, however, Tisdale had stated that the plaintiff had won by a vote of 529 to 528. Tisdale later testified that the affidavit was correct.

parties who served at such election (or opposing sides in a primary); [and] at least two ballot clerks of opposing political parties . . . ." Kanasky further testified that it was his understanding that the registrar of voters had the authority to appoint the recanvass officials. Ayala testified that she "deferred to [Kanasky, who was] in charge of the [recanvass] as to what to do with . . . Tisdale's request" to be appointed as an official counter.

As we indicated previously, the trial court determined that the refusal to appoint Tisdale as an official counter at the recanvass was a ruling by an election official within the meaning of § 9-329a and was an improper ruling under § 9-445.[10] The court concluded, however, that the plaintiff had not met her burden of proving that, but for the improper ruling, the result of the recanvass might have been different. In support of this conclusion, the court found that, because Tisdale had been trying to keep track of the counts for both the absentee ballots and the regular ballots, he had been distracted and "was not in the best position to provide an accurate count." The court further found that it was possible that Tisdale had not understood the counting process. Thus, the court implicitly found that the plaintiff had failed to establish that there had been a miscount. The court also noted that, although it could "order a recount of the votes cast in [the plaintiff's] election district . . . the [plaintiff] is not seeking this remedy in her prayer for relief, and the court, therefore, on this record, declines to order such a recount, sua sponte."

---

[10] The trial court noted that § 9-445 required equal division of the recanvass officials among the individual candidates for office, while the materials provided by the secretary of the state indicated that the positions should be divided between the "opposing sides" in a primary. The court suggested that, because there were two "sides" in the primary, one headed by William Finch, the party endorsed candidate for the office of mayor, and the other headed by Caruso, Kanasky may have been misled to believe that there should be only two sets of recanvass officials, instead of one set for each individual candidate. As we have indicated, there were six individual candidates for the office of city council for the 135th voting district.

We conclude that the trial court properly determined that the plaintiff was not entitled to a new primary election. We are not persuaded that the improper ruling denying the plaintiff's request to appoint Tisdale as an official counter was the *cause* of any unreliability in the result. Although it is possible that, if Tisdale had been appointed, any discrepancies in the count at the recanvass would have been resolved by an immediate recount, that does not mean that the refusal to appoint him *caused* the alleged unreliability in the first instance. Rather, any unreliability was caused by the alleged miscount itself. It is clear, therefore, that the plaintiff's claim more properly is characterized as a claim that there was a "mistake in the count of the votes cast at [the] primary"; General Statutes § 9-329a (a) (2); than as a claim that she was "aggrieved by a ruling of an election official . . . ." General Statutes § 9-329a (a) (1).

We also conclude that, as a general rule, a recount of the vote is the appropriate remedy when the plaintiff has alleged a simple counting mistake under § 9-329a (a) (2), rather than the far more drastic remedy of a new primary election. See General Statutes § 9-329a (b) ("[i]f, after hearing, sufficient reason is shown, such judge may order any voting machines to be unlocked or any ballot boxes to be opened and a recount of the votes cast, including absentee ballots, to be made"); see also *Caruso* v. *Bridgeport*, supra, 285 Conn. 637–38 ("a court should be very cautious before exercising its power . . . to vacate the results of an election and to order a new election" [internal quotation marks omitted]). This conclusion is supported by the language of § 9-329a (b) (3) providing that a judge may order a new primary only if he finds that, "but for . . . any mistake in the count of the votes . . . the result of such primary might have been different and *he is unable to determine the result of* [*the contested*] *primary*." (Emphasis

added.) This language indicates a clear legislative intent that an order for a new primary should be a remedy of last resort. If a judge could determine the result of the primary by ordering a recount, the plaintiff should not be permitted to circumvent this legislative intent merely by declining to ask for a recount.

In the present case, counsel for the plaintiff stated at oral argument before this court that the plaintiff did not request a recount because she had no confidence that the chain of custody of the ballots would be guaranteed. Thus, the plaintiff implicitly argues that a recount would have been futile. The suggestion that the ballots would have been tampered with before a recount could be conducted is not supported by any evidence, however, and is entirely speculative. Accordingly, there is no factual basis for a claim of futility. In any event, it is clear from counsel's remarks at oral argument that the plaintiff did not seek and would not have been satisfied by an order for a recount.

Accordingly, we need not consider whether the plaintiff established that, "but for the . . . mistake in the count of the votes . . . the result of such primary might have been different . . . ." General Statutes § 9-329a (b) (3). Even if we assume that the plaintiff met her burden of proof, the public interest in the stability of elections and our need to exercise great caution when interfering with that interest; see *Caruso* v. *Bridgeport*, supra, 285 Conn. 637–38; as well as the statutory requirement that the court must be unable to determine the result of the contested primary before ordering a new primary, compel the conclusion that the drastic remedy of ordering a new primary election should not be granted when the plaintiff has alleged a simple counting mistake and has chosen to forgo the remedy of a recount without any showing that a recount would have been futile or otherwise inappropriate. Because the plaintiff

in the present case made no such showing, we conclude that she was not entitled to a new primary election.

The judgment is affirmed.

In this opinion the other justices concurred.