# TRADESOURCE, INC. *v.* KEMPER CONSTRUCTION, INC., ET AL.
## (AC 25894)

DiPentima, Gruendel and West, Js.

Argued January 12—officially released August 8, 2006

*Jack G. Steigelfest,* for the appellants (defendants).

*Cheryl Ann Gordon* filed a brief for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. In this action for breach of contract, the defendants, Kemper Construction Company, Inc. (Kemper), and its president, Theodore L. Kemp, appeal from the judgment of the trial court rendered in accordance with a report by an attorney trial referee (referee) in favor of the plaintiff, TradeSource, Inc. (Trade-Source). On appeal, the defendants claim that the court improperly rendered judgment on the report in favor of TradeSource. We agree and reverse in part the judgment of the trial court.

The following facts and procedural history are germane to our discussion. TradeSource is an employment service that provides laborers to building contractors. Kemper is a building contractor for commercial and residential remodeling. On September 22, 1997, Trade-Source and Kemper entered into an agreement under which TradeSource would provide Kemper with laborers for construction projects and, in return, Kemper would pay TradeSource for the labor provided. Pursuant to paragraph three of the contract, Kemper was responsible for paying the established hourly rate for each hour a laborer worked. Further, if TradeSource wanted to adjust its rates, it was obligated to provide Kemper with at least ten days notice of any change in the established rate, providing Kemper the opportunity to decide whether to order the worker at the adjusted price.

Kemper satisfied all invoices from TradeSource from 1997 through 1999. None of these invoices included a separate sales tax charge.[1] Beginning with Trade-Source's invoice dated January 11, 2000, TradeSource changed its billing practice and added a 6 percent sales tax on its invoices.[2] Kemper refused to pay that portion of the invoices that was labeled as sales tax, claiming that a separate sales tax charge was not included in the original contract.[3]

Tradesource served a complaint against the defendants, dated March 11, 2002, seeking damages for breach of contract. In the complaint, TradeSource claimed that it provided construction workers to the defendants at an agreed on rate and price, and that Kemp personally guaranteed payment of all amounts due. The complaint further asserted that a balance of $23,585.97 was due for the period of July 3 to September 25, 2001, and that the defendants had refused to pay.[4] The defendants' answer admitted that TradeSource had

[1] General Statutes § 12-408 (1) imposes a 6 percent tax on sales in Connecticut, providing in relevant part: "For the privilege of making any sales, as defined in subdivision (2) of subsection (a) of section 12-407, at retail, in this state for a consideration, a tax is hereby imposed on all retailers at the rate of six per cent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail or from the rendering of any services constituting a sale in accordance with subdivision (2) of subsection (a) of section 12-407 . . . ."

[2] In its brief, TradeSource claims that in 2000, the state required providers to charge a sales tax for temporary services. It further claims that it sent a letter, dated January 12, 2000, to all of its customers explaining that it recently had been audited by the state and was then required to add sales tax to its invoices. The defendants claim, and we concur, that there was no applicable change in the law regarding sales tax in 2000. Rather, pursuant to § 12-426-27 (a) of the Regulations of Connecticut State Agencies, from the signing of the original contract on September 22, 1997, TradeSource was always responsible for collecting sales tax from Kemper.

[3] Kemper paid TradeSource $454,509.56, or $21,575.06 less than Trade-Source's net billings of $476,084.62.

[4] In addition to seeking payment for the unpaid sales tax, TradeSource further sought 1.5 percent per month in finance charges pursuant to the contract, together with reasonable attorney's fees and costs.

provided construction workers, but denied the remaining allegations.

The case was tried before the referee, Thomas P. Weldy, who requested posttrial briefs on the sales tax issue. The defendants argued that this claim did not fall under the parties' contract, was inconsistent with the terms of the parties' contract and, because they had relied on the parties' agreement and prior practice, was prejudicial to them. The referee rejected these arguments, holding that General Statutes § 12-408 (2),[5] the statute concerning sales and use tax imposed on retailers, obligated the defendants to pay the sales tax in addition to the other charges on the invoices, which TradeSource began issuing on January 11, 2000.

In his report, the referee found that TradeSource had supplied services to Kemper that were subject to the Connecticut sales tax charge. Therefore, the referee concluded that TradeSource had a duty to impose the tax on and collect the tax from Kemper.

The defendants filed an objection to the referee's report with respect to the imposition of the sales tax charge. The court rendered judgment in accordance with the report, thereby overruling the defendants' objection. The court reasoned that the "state statute required the collection of the tax and '[u]nless the agreement indicates otherwise, [an applicable] statute existing at the time an agreement is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein.' *Sicaras* v. *Hartford*, 44 Conn. App. 771, 782, 692 A.2d 1290, cert. denied, 241 Conn. 916, 696 A.2d 340 (1997). The

---

[5] General Statutes § 12-408 (2) provides in relevant part: "Reimbursement for the tax . . . shall be collected by the retailer from the consumer [and] shall be paid by the consumer to the retailer" and "[s]uch tax shall be a debt from the consumer to the retailer, when so added to the original sales price, and shall be recoverable at law in the same manner as other debts . . . ."

agreement did not indicate otherwise, and the sales tax was applicable." This appeal followed.[6]

The defendants claim that the court improperly found that pursuant to the report of the referee, they had breached their contract with TradeSource. Specifically, the defendants argue that as a matter of law, they are not obligated to pay sales tax in addition to the contract price on which they originally relied. We agree.

We first set forth the standard of review. Under our well established principles of contract interpretation, "[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 188, 819 A.2d 765 (2003). "If . . . the language of the contract is clear and unambiguous, the court's determination of what the parties intended in using such language is a conclusion of law. . . . In such a situation our scope of review is plenary . . . ." (Internal quotation marks omitted.) *Choi* v. *Argenti*, 91 Conn. App. 681, 683–84, 881 A.2d 1053 (2005).

"[B]ecause the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [a referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment. . . . Where legal conclusions are challenged, we

---

[6] The court remanded the case to the referee for a finding of attorney's fees. The referee issued a supplemental report on July 7, 2004, which the court accepted and on which it rendered judgment on September 22, 2004, in favor of TradeSource for $31,313.07.

must determine whether they are legally and logically correct and whether they find support in the facts found by the . . . referee." (Internal quotation marks omitted.) *Chila* v. *Stuart*, 81 Conn. App. 458, 465, 840 A.2d 1176, cert. denied, 268 Conn. 917, 847 A.2d 311 (2004).

As an initial matter, we note that the facts found by the referee are not in dispute and that the issue regarding Kemper's liability on the sales tax charge involves a question of law.[7] Therefore, the recommendation of the referee as to whether the 6 percent sales tax should be added to the terms of the contract need not be heeded.

The defendants maintain that the referee properly found that § 12-408 (2) must be read into the parties' original contract, dated September 22, 1997. To this end, the defendants acknowledge that Kemper legally was obligated to pay TradeSource sales tax beginning on September 22, 1997, in accordance with § 12-408 (2), but argue that the tax was included in the contract price. The defendants do not agree, however, with the referee's conclusion, approved by the court, that they were obligated to pay TradeSource an additional 6 percent sales tax beginning January 11, 2000.

Like the defendants, we do not agree that Kemper was liable for the 6 percent sales tax that TradeSource began charging in addition to other billed services on January 11, 2000. The court essentially permitted TradeSource to charge Kemper sales tax on two occasions—both at the time the contract was made and later, when TradeSource imposed a 6 percent sales tax charge in addition to the other billings on January 11, 2000.

[7] At oral argument, the defendants conceded that the facts found by the referee were not in dispute. Although TradeSource was not present at oral argument before this court, TradeSource, in its brief, also did not contest the facts found by the referee.

The issue of a seller's ability to add sales tax when the buyer relied on the negotiated price of the contract has not been addressed directly by Connecticut courts. As the defendants highlight in their brief, a number of other jurisdictions, however, have addressed this issue and found that when applicable taxes are assumed to be included in the contract price, the seller remains liable for the payment of any additional tax. In *Ready Trucking, Inc.* v. *BP Exploration & Oil Co.*, 248 Ga. App. 701, 548 S.E.2d 420 (2001), for example, the parties contracted for the delivery of oil on the basis of an agreed on price. By statute, the seller was obligated to collect the tax, but failed to include it in the sales price. Although the government collected the tax from the buyer, the court determined that the negotiated price must be held to have included all applicable taxes. The buyer therefore was able to recover from the seller any tax amount paid above and beyond the agreed on contract price.[8] Likewise, we conclude that the defendants should not have to pay TradeSource any tax amount not already included in the contract price.

The language of the contract was clear and unambiguous. Among other terms, the September 22, 1997 contract stipulated that Kemper was to pay the laborers' hourly rates as established by TradeSource. As a matter of law, these rates incorporated the 6 percent sales tax that Kemper legally was obligated to pay TradeSource

[8] In reaching its conclusion, the court stated: "The parties do not contend that the discussion or the facsimile ever mentioned the applicable taxes. However, the parties do not dispute that as a retail seller, BP incurred a statutory obligation to collect and remit all applicable sales taxes to the State. . . . This obligation necessarily became a term of the agreement because laws in existence at the time a contract is executed are part of that contract. . . . Accordingly, absent an agreement to the contrary, a simple quote to purchase gasoline at a certain price would include an agreement that the price included all applicable taxes." (Citations omitted; internal quotation marks omitted.) *Ready Trucking, Inc.* v. *BP Exploration & Oil Co.*, supra, 248 Ga. App. 702.

under § 12-408 (2). "As a general matter, parties are presumed to have contracted with knowledge of the existing law, and contract language must be interpreted in reference thereto. . . . Unless the agreement indicates otherwise, a statute existing at the time an agreement is executed becomes part of it and must be read into it just as if an express provision to that effect were inserted therein." (Citation omitted; internal quotation marks omitted.) *LMK Enterprises, Inc.* v. *Sun Oil Co.*, 86 Conn. App. 302, 307, 860 A.2d 1229 (2004).

Further, a merger clause on the final page stipulated that the contract was the entire agreement of the parties and could not be modified except in writing signed by both parties. Such a modification was never effectuated, as the parties did not, in addition to the sales tax already included in the contract price, impose or contemplate another sales tax charge at a later date. "[T]he unambiguous terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence." (Internal quotation marks omitted.) *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 610, 849 A.2d 804 (2004).

The defendants satisfied their promise under the contract by paying the negotiated contract price of the laborers' wages. In paying these hourly wages, the defendants also paid the statutory 6 percent sales tax and fully complied with their duties and obligations as set forth under the terms and conditions of the parties' agreement. "[I]n private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability." (Internal quotation marks omitted.) *Gibson* v. *Capano*, 241 Conn. 725, 730–31, 699 A.2d 68 (1997). Any additional liability beyond the rate originally contracted for, including another 6 percent

sales tax charge by TradeSource beginning January 11, 2000, would be contrary to the terms of the contract. Kemper therefore did not breach the contract when it did not pay TradeSource an additional 6 percent over and above the established rates. Accordingly, we conclude that with respect to its determination regarding the 6 percent sales tax, the court improperly determined that the facts found legally and logically led to the conclusion that Kemper breached its contractual obligations to TradeSource.

Finally, we address whether the court improperly awarded TradeSource certain other damages for breach of contract. "[T]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Internal quotation marks omitted.) *Smithfield Associates, LLC* v. *Tolland Bank,* 86 Conn. App. 14, 31, 860 A.2d 738 (2004), cert. denied, 273 Conn. 901, 867 A.2d 839 (2005). The court awarded TradeSource $31,313.07 in damages. This award consisted of $21,575.06 for unpaid invoices, $8738.01 for finance charges and $1000 for attorney's fees. As the defendants note in their reply brief, of the $21,575.06 of unpaid invoices, approximately $17,956.61 consisted of sales tax charges. The remaining $3618.45 related to charges for which the defendants had sought credit, but which TradeSource refused to apply to the defendants' account.

Inasmuch as we have determined that the defendants did not breach the parties' agreement with respect to the 6 percent sales tax, it was improper for the court to award damages consisting of the sales tax charges and any finance charges and attorney's fees incidental thereto. Whether the defendants are liable to TradeSource for the remaining credit charges of $3618.45, and any related charges thereto, is a question to be determined by the court on remand.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants on the sales tax issue and for further proceedings to redetermine damages, if any, in accordance with this opinion.

In this opinion the other judges concurred.