STEVEN CHILA *v.* RICHARD L. STUART ET AL.
(AC 23504)

Bishop, DiPentima and Mihalakos, Js.

Argued October 29, 2003—officially released February 10, 2004

*David M. Wallman,* with whom, on the brief, was *Elizabeth A. DiRusso,* for the appellant (plaintiff).

*Robert S. Bello,* with whom, on the brief, were *Lawrence M. LaPine* and *Thomas M. Cassone,* for the appellees (defendants).

*Opinion*

DiPENTIMA, J. In this action arising out of a contract dispute, the plaintiff, Steven Chila, appeals from the judgment of the trial court rendered in accordance with the report of an attorney trial referee (referee) in favor of the defendants, Richard L. Stuart and Robert L. Stuart, on their counterclaim against the plaintiff. The plaintiff had acted as a consultant to the defendants in forming a corporation, Wilton Auto Service Center, Inc., a business venture that failed. The plaintiff claims that (1) the defendants did not have standing to assert personal claims against him because any breach of contract

damages were sustained by a nonparty corporation in which he and the defendants were officers and (2) the court improperly awarded damages to the defendants.

The facts and procedural history pertinent to this appeal are as follows. The plaintiff commenced this breach of contract action against the defendants on March 1, 1998, to recover a $53,000 consulting fee allegedly owed to him by Wilton Auto Service Center, Inc. The defendants denied that funds were owed to the plaintiff and filed a counterclaim against him,[1] alleging, inter alia, breach of fiduciary duties, breach of contract, misrepresentation, breach of the implied covenant of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., tortious interference, wrongful diversion of customers and conversion. The case proceeded to trial before the referee on January 18 and 19, and February 20, 2001. Posttrial briefs were filed on April 17, 2001. On August 14, 2001, the referee filed his report recommending that judgment be rendered in favor of the defendants on the plaintiff's complaint. He further recommended that "[w]ith respect to the defendants' counterclaim . . . judgment enter for the defendants on the first count, with rescission-restitution as the remedy ($173,000); on the fourth count, with damages of $9000 (duplicative of a portion of the award on the first count); and on the fifth count in the amount of $15,000 (again, with $9000 duplicative of an element of the award under the first count)." He recommended, in the alternative, that "with respect to the first count

---

[1] The defendants also filed four special defenses claiming that the plaintiff was not entitled to the requested relief because (1) he had misrepresented the degree of his involvement in the new business, (2) the agreement was unconscionable, (3) the agreement was illusory and was made without consideration, and (4) the defendants already had paid to the plaintiff certain sums as "consulting fees." Because no appeal was filed in connection with the judgment on the plaintiff's complaint, those special defenses are not at issue.

of the counterclaim, should rescission-restitution be deemed inappropriate under the circumstances, judgment should enter for defendants for damages in the amount of $150,000 plus consequential damages of $23,000 . . . ."

The referee found the following facts pertinent to the issues in this appeal. On October 2, 1997, the defendants signed an agreement prepared by the plaintiff's attorney, who acknowledged to the defendants in writing that she was representing the interests of the plaintiff and not the defendants. The defendants were not aware of and had not reviewed the prepared agreement and various other documents involving the franchisor, Standard Oil Company, or the leases for the subject premises until that date. The terms of the agreement between the plaintiff and the defendants required the defendants to provide the plaintiff with $150,000 (including an $80,000 deposit previously provided to the plaintiff) for all start-up costs and the balance to the plaintiff for finding the opportunity and negotiating agreements with Standard Oil Company. In addition, the defendants were required to pay an additional $53,000 consulting fee for the plaintiff's services to be rendered to the defendants during the six months following the closing. The agreement also provided that the plaintiff would be the president of the new corporation with a 22 percent interest therein, but without sharing the profits. The defendants had no prior experience in running a service station, and were in need of the plaintiff's substantial experience in operating service stations and automobile repair shops.

The referee also found that the plaintiff did not use his "best efforts" in regard to his consulting services, as required by the agreement, in that (1) in the first month of operation, he was at the station only "on a very limited number of occasions" and monitored operations primarily by telephone, (2) in the first month

of operation, the plaintiff took a ten day vacation, (3) he did not make a "special effort" in assisting the defendants with starting the new business, despite the fact that when the plaintiff did make some efforts, problems were generally resolved quickly, (4) the plaintiff, with some frequency, diverted the defendants' customers to his own shop in Darien for repairs, especially when the defendants did not have qualified personnel at the Wilton service station, and all profits were retained by the plaintiff, (5) the plaintiff received $9000 from the defendants to purchase tools belonging to the prior operator, negotiated with the prior operator to purchase the tools for $8000, but subsequently stopped payment on his own check and failed to return the funds to the defendants, who never obtained ownership of the tools, (6) the defendants paid the plaintiff a total of $173,000, including $150,000 earmarked for start-up costs.

The referee then suggested various conclusions. He concluded that the plaintiff had breached the contract with the defendants. Specifically, the plaintiff failed to perform his obligations under the contract in that he failed to provide his "best efforts" in consulting with the defendants. The referee further concluded that the defendants had entered into the agreement with the plaintiff in reliance on the expectation that the plaintiff would provide his "best efforts" and that without such efforts, the contract failed of its essential purpose. He then concluded that rescission was an appropriate remedy. Finally, he concluded that the plaintiff had breached the covenant of good faith and fair dealing and violated CUTPA. As to damages, the referee recommended that for purposes of rescission-restitution, because the defendants had paid the sum of $173,000 to the plaintiff, they should therefore recover that amount. The referee recommended that if rescission-restitution was inapplicable, the plaintiff should pay to the defen-

dants contract damages of $150,000, with consequential damages of $23,000.[2]

On December 27, 2001, the plaintiff filed objections to numerous factual findings of the referee, supported by affidavits that were reviewed by the trial court. The defendants then filed a motion to strike the plaintiff's affidavits, which was granted by the court on March 25, 2002, over the plaintiff's objection.

In its memorandum of decision, the court addressed the question of whether there was sufficient evidence and testimony to support the referee's conclusion that the plaintiff had failed to live up to his agreement as a consultant to the defendants. The court found that "[t]he transcript of the trial indicates that there is indeed sufficient evidence to justify the findings of the [referee] to that effect." The court overruled the plaintiff's objection that the referee should have been recused because of an alleged conflict of interest.

Finally, the court sustained the plaintiff's objection to the referee's recommendation of rescission, but found that "the issue of whether rescission is an appropriate remedy is not important because the referee also recommended that the defendants recover . . . on a breach of contract theory." The court thus accepted the report of the referee and rendered judgment in the amount of $173,000 against the plaintiff and in favor of the defendants. This appeal followed.

I

The plaintiff first claims that the defendants as individuals did not have standing to sue for damages sustained by a nonparty corporation in which the plaintiff

---

[2] The referee recommended that interest should not be allowed on the award based on rescission and that no punitive damages or attorney's fees should be allowed.

and the defendants were officers, directors and share-holders. We disagree.

For a court to have subject matter jurisdiction over a claim, the party asserting the claim must have standing. *Ardmare Construction Co.* v. *Freedman*, 191 Conn. 497, 501, 467 A.2d 674 (1983). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest . . . in the subject matter of the controversy." (Internal quotation marks omitted.) Id.

The facts the defendants pleaded and proved are sufficient to allege a cause of action for breach of contract. "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded. . . . It is axiomatic that an action upon a contract or for breach of a contract can be brought and maintained by one who is a party to the contract sued upon . . . ." (Citation omitted; internal quotation marks omitted.) *Cottman Transmission Systems, Inc.* v. *Hocap Corp.*, 71 Conn. App. 632, 639, 803 A.2d 402 (2002). In this case, the defendants entered into and were parties to an agreement with the plaintiff to form a corporation and to receive consulting services from him.[3] That is sufficient to establish standing for a breach of contract action. Accordingly, we reject the plaintiff's argument that the court lacked subject matter jurisdiction.

---

[3] We note that the plaintiff did not name the corporation as a defendant in the complaint.

## II

The plaintiff next claims that the trial court improperly awarded damages, pursuant to the report of the referee, because there was no competent evidence of damages sustained by the defendants. Specifically, the plaintiff argues that ordering a return of the defendants' entire capital investment is an improper measure of damages for a breach of the plaintiff's obligations under the agreement. He further argues that such an award is, in effect, an improper rescission of the contract. We disagree.

### A

We first examine whether the court's adoption of the referee's conclusions with respect to the breach of contract theory was proper. "[B]ecause the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [a referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the . . . referee." (Citation omitted; internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 202, 819 A.2d 227 (2003).

The court adopted the recommendation of the referee that the total amount of the defendants' investment be returned, not as a refund, but as "damages that flow naturally from the breach." "We have no difficulty with the basic idea that a party injured by a breach of contract may under certain circumstances recover the cost of his reliance as part of his expectation interest. . . .

Based upon the elementary proposition that the measure of damages for a breach of contract is the loss which the injured party has thereby sustained, the rule in its more specific application embraces the two distinct elements of (1) expenditures already incurred towards performance, and (2) the profits that he would realize by performing the whole contract." (Citations omitted; internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, 201 Conn. 305, 328, 514 A.2d 734 (1986). The defendants submitted evidence as to the first of those two elements.

Our Supreme Court has stated that "[w]hile the actual or out-of-pocket cost . . . of acquiring . . . capital assets may be evidence of value, the value of that investment at the time of the breach [is] not *necessarily* the amount originally paid for it." (Emphasis added; internal quotation marks omitted.) Id., 330–31. Thus, to ascertain the value of the defendants' capital investment, the value of that investment before the breach, minus the value after the breach, would have to be ascertained. "The difference between these two values, *if any*, will reflect the correct amount of the plaintiff's loss of investment in capital assets resulting from the breach of contract." (Emphasis added.) Id., 331. We therefore conclude that the court's decision to adopt the recommendation that the defendants recover under a breach of contract theory was legally and logically correct.

B

The determination of whether the court improperly accepted the referee's report with respect to damages involves a question of fact. We review facts found by a referee and adopted by the court under the clearly erroneous standard. "The assessment of damages is peculiarly within the province of the trier and the award will be sustained so long as it does not shock the sense

of justice. The test is whether the amount of damages awarded falls within the necessarily uncertain limits of fair and just damages." (Internal quotation marks omitted.) *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 174–75, 530 A.2d 596 (1987). "There are no unbending rules as to the evidence by which [damages for breach of contract] are to be determined. . . . In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *L.F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 41, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986).

In the present case, the plaintiff argues that there was no competent evidence of damages sustained by the defendants for the plaintiff's failure to consult with the defendants. "The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . It has traditionally been held that a party may recover general contract damages for any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself." (Citations omitted; internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, supra, 201 Conn. 319.

The court adopted the reasoning of the referee with respect to the damages award based on a breach of contract theory. The referee found that "the value of the business opportunity was the $203,000 [that the] defendants were willing to pay (and the plaintiff was

willing to accept). It is the opportunity to succeed that the defendants lost. The contract damages, from that perspective, are $203,000, less the $53,000 that was never paid. Under this analysis, the additional $23,000 proven to have been paid by the defendants would constitute consequential damages of the breach." The referee concluded that the value of the investment before the breach was $173,000 and that the defendants had "lost the entire $150,000" paid into the initial investment, as well as the additional $23,000 paid for tools that they never received. On the basis of the evidence, we cannot conclude that the court's damages award was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.