TERRANCE STEVENSON *v.* COMMISSIONER OF CORRECTION
(AC 28977)

Bishop, Harper and Beach, Js.

Argued November 13, 2008—officially released February 17, 2009

*Michael Oh*, special public defender, for the appellant (petitioner).

*Melissa Patterson*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Terrance Stevenson, appeals from the judgment of the habeas court dismissing his fourth amended petition for a writ of habeas corpus. The petitioner claims that the court improperly concluded that his counsel in a prior habeas proceeding did not render ineffective assistance by failing to pursue adequately a claim related to the performance of his trial counsel. We affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. Following a jury trial, the petitioner was convicted of conspiracy to commit murder and as an accessory to murder. The petitioner was sentenced to a total effective term of incarceration of sixty years. Following a direct appeal, the judgment of conviction was affirmed by this court. *State* v. *Stevenson*, 53 Conn. App. 551, 733 A.2d 253, cert. denied, 250 Conn. 917, 734 A.2d 990 (1999).

The opinion of this court set forth the following facts underlying the conviction: "On March 21, 1994, Jeffrey Dolphin became involved in a dispute with James Baker and the [petitioner] over a lost quantity of cocaine. At some point during this dispute, Baker, Dolphin and the [petitioner] were joined by Jermaine Harris, also known as 'Chico,' and Trent Butler. While Dolphin maintained that a third party lost the cocaine, the [petitioner] blamed Dolphin for the missing cocaine and pulled a gun on him.

"Thereafter, Baker asked, 'Why don't we make this motherfucker do it?' The [petitioner] pointed the gun at Dolphin again and forced him into the back of an old white station wagon driven by Baker. Butler, Harris and the [petitioner] were also in the car. Butler then told Dolphin that they wanted him to shoot somebody to make up for the money that he had lost, which Dolphin refused to do.

"Upon Dolphin's refusal, Harris stated that he would shoot the victim, Amenophis Morris. At that point, Baker parked the vehicle on Exchange Street in New Haven, about one-half block from the victim's home. Harris got out of the car, put on a mask and walked to the victim's home accompanied by the [petitioner], while the others remained behind. Both of the men were armed. Dolphin then heard nine or ten gunshots from the direction of the victim's home, although he could not see who was shooting. When Harris and the [petitioner] returned to the vehicle, Harris shouted, 'I got him!' The victim had been shot to death as he sat on his front porch eating dinner.

"When the men let Dolphin out on another street, they threatened him and told him not to say anything about what had happened. Approximately one month after the homicide, the New Haven police department arrested Dolphin on unrelated narcotics charges. While

in custody, Dolphin provided the police with information implicating Baker, Butler and Harris in the homicide. Dolphin did not give the police the [petitioner's] name or his street name, 'Joe the Flea.' The following day, Dolphin made a photographic identification of Harris.

"In February, 1995, in a tape-recorded statement, Dolphin informed Butler's attorney, Leo Ahern, that the information he had told the police was false. Thereafter, in early March, 1995, in another conversation with the New Haven police, Dolphin made photographic identifications of Butler and Baker. At that time, Dolphin stated to the police that he did not recognize anyone else in the array of photographs, including the [petitioner]. In September, 1995, Dolphin informed the state's attorney's office that the statement that he made to Ahern was false. It was not until October 31, 1995, that Dolphin informed the police that the fourth individual involved in the homicide was 'Joe the Flea,' and that his real name was Terrance Stevenson, the [petitioner]." Id., 553–55.

Following his conviction, the petitioner filed a petition for a writ of habeas corpus based in part on a claim that his trial counsel, Thomas Conroy, had rendered ineffective assistance. In this prior habeas proceeding, the petitioner was represented by David B. Rozwaski. The court rejected the petitioner's claims and denied the petition. Subsequently, this court, holding that the habeas court had not abused its discretion in denying the petitioner's petition for certification to appeal, dismissed the petitioner's appeal from that ruling. *Stevenson* v. *Commissioner of Correction*, 67 Conn. App. 908, 792 A.2d 909, cert. denied, 260 Conn. 905, 795 A.2d 547 (2002).

In the present habeas proceeding, the petitioner alleged in a two count fourth amended petition for a writ of habeas corpus that Rozwaski had rendered

ineffective assistance. In count one, the petitioner alleged that Rozwaski was deficient in that he had failed to raise claims relating to the performance of the assistant public defender who represented the petitioner in the direct appeal. The petitioner does not challenge the court's resolution of that count of his petition.

In count two, the petitioner alleged that Rozwaski was deficient in that he failed to raise a claim related to Conroy's ineffective representation in that, during the petitioner's criminal trial, Conroy had failed adequately to discredit Dolphin's testimony that Dolphin had been threatened by the petitioner's codefendants. The following facts provide context for this claim. At the petitioner's criminal trial, Dolphin testified with regard to his conflicting statements concerning the individuals involved in the crimes and why, having had earlier opportunities to do so, he had not identified the petitioner as having been involved in the shooting until October, 1995. Essentially, Dolphin attributed his statements and his late identification of the petitioner to the fact that he had been threatened while he was incarcerated at the New Haven Correctional Center prior to trial. Dolphin testified concerning several specific instances between 1994 and 1995 in which he had been threatened by Baker, Butler and Harris, the petitioner's codefendants, who also were incarcerated at the facility.

During the present habeas proceeding, the petitioner presented evidence that at the criminal trial, Conroy had presented testimony from two department of correction employees that contradicted Dolphin's testimony that he had been threatened by Butler on March 8, 1995, and that Conroy had not presented any additional evidence to challenge Dolphin's testimony that he had been threatened on other occasions. The petitioner also presented evidence concerning Rozwaski's investigation of this aspect of the criminal trial and Rozwaski's representation during the prior habeas proceeding.

During the present habeas proceeding, the petitioner also presented evidence that he believed was relevant to discrediting Dolphin's claims. This evidence had not been presented either by Conroy during his criminal trial or Rozwaski during the prior habeas proceeding. As relevant, the petitioner presented testimony from Michelle DeVeau, a records specialist at the department of correction. DeVeau testified that a computer data entry known as an RT-42 appeared in Dolphin's department file. DeVeau explained that RT-42 entries are confidential and are accessible to and seen by some department personnel only. DeVeau also testified that a purpose of the RT-42 was to notify department personnel of issues or conflicts between inmates or between inmates and department personnel to keep inmates separated from those with whom conflict was likely. The entry at issue, dated May 3, 1994, stated that Dolphin was testifying against both Baker and Butler but did not specify that steps should be taken to keep Dolphin away from these inmates.

The petitioner also presented testimony from Robert Correa, the warden of the New Haven Correctional Center. Correa testified that he was not aware of the existence of any directive to keep Dolphin away from these individuals. He also testified, however, that, generally, if a prison employee had knowledge of the contents of an RT-42, it would have caused such employee to keep the inmates involved separated in terms of housing, movement within the prison and otherwise. With regard to one of the instances of threatening, Dolphin stated that he had been threatened by Baker and Harris in the prison gym in March, 1995. Correa testified that, at times relevant, Baker, Butler and Harris likely were housed in the prison cell block and that Dolphin likely was housed in the prison dormitories. Because Dolphin and these other inmates were members of two separate prison populations, Correa opined, such an encounter

during recreation time in the prison gym would have been contrary to prison policy. Correa also testified, however, that other opportunities existed for members of these separate populations to come into contact with each other while incarcerated at the prison.

The petitioner also presented testimony from a judicial branch marshal concerning procedures that marshals followed generally when transporting inmates when the marshals had departmental notice that a "keep separate" order appeared in an inmate's department file. Finally, the petitioner testified, inter alia, concerning his personal knowledge of the living situations of Harris, Baker, Butler and Dolphin while at the prison, as well as his knowledge of relevant procedures and customs concerning the interaction of inmates at the prison. The petitioner also testified that he discussed these issues, related to Dolphin's testimony, with both Conroy and Rozwaski.

In ruling on the petitioner's claim, the habeas court stated: "The shooting which gave rise to this case occurred on March 21, 1994. While Dolphin implicated Baker, Butler and Harris shortly afterward, he did not implicate the petitioner until October 31, 1995, despite being shown a photographic array containing the petitioner's [photograph] in March, 1995. At trial, Dolphin gave as his reason for not identifying the petitioner that the petitioner's codefendants had threatened him while they were all incarcerated together at the New Haven Correctional Center. In support of this claim, the petitioner elicited testimony from [DeVeau and Correa].

"In order to prevail on this claim, the petitioner is required to prove that trial counsel . . . Conroy, was ineffective and [that] had it not been for such deficiency, the petitioner would likely have been acquitted. The court must therefore find that had the jury heard the testimony that was elicited during this habeas trial, [it]

probably would have had a reasonable doubt about the testimony of Dolphin, and the petitioner would probably have been acquitted.

"After a careful review of the testimony, particularly that of warden Correa, it is the opinion of the court that the petitioner has proven that the petitioner's codefendants were likely housed in the cell block area of New Haven Correctional Center and that Dolphin was likely housed in the dorms. However, it is also the opinion of the court that the petitioner has not proven that his codefendants and Dolphin could not have had contact with each other despite the fact that they were in separate housing facilities.

"Therefore, it is the opinion of the court that the petitioner has not proven his claim that, but for the deficiency of trial counsel, he probably would have been acquitted." The court dismissed the petition for a writ of habeas corpus and subsequently granted the petition for certification to appeal. See General Statutes § 52-470 (b). This appeal followed.

On appeal, the petitioner claims that Conroy was ineffective in that he challenged Dolphin's testimony with regard to only one of the incidents of threatening that Dolphin described. The petitioner argues: "Attorney Conroy should have obtained the RT-42 and should have procured the testimony of warden Correa and Michelle DeVeau to produce evidence tending to show that . . . Dolphin would have been kept separate from the other defendants." The petitioner argues that he demonstrated the prejudicial effect of Conroy's performance: "Had attorney Conroy introduced the RT-42 and the testimony of Correa and DeVeau, there is a reasonable probability that the jury would have had reasonable doubt as to . . . Dolphin's claims of being threatened by the codefendants and thus reasonable doubt as to the identification of the petitioner as a participant in

the murder." The petitioner claims that in concluding that he did not prove that Conroy's alleged deficient performance caused him any harm at trial, the court improperly required him to prove the facts underlying his petition beyond a reasonable doubt. The petitioner argues: "To require . . . that the petitioner prove that it was impossible for . . . Dolphin and his codefendants to have any contact is to require proof at a standard higher than the fair preponderance of the evidence standard."[1] (Internal quotation marks omitted.)

"The standard of appellate review of a habeas corpus proceeding is well settled. Although a habeas court's

---

[1] The petitioner also argues that if this court agrees that Conroy's representation was deficient as alleged, "then . . . Rozwaski had an obligation to pursue that claim" concerning Conroy during the prior habeas proceeding. The petitioner notes the new evidence that his attorney in the present proceeding, Damon A. R. Kirschbaum, presented in support of the petition. The petitioner argues: "If that evidence was available to . . . Kirschbaum, then it was available to Rozwaski. The prejudice to [the] petitioner from . . . Rozwaski's negligence is that [the petitioner did not prevail in the prior habeas proceeding]. Had . . . Rozwaski raised the claim against . . . Conroy and put on the evidence he should have, there is a reasonable probability that the [prior] habeas petition would have been granted."

The court did not make any findings concerning the adequacy of the representation provided to the petitioner by Conroy or Rozwaski but tailored its analysis to the issue of prejudice. The court did not conclude expressly that the petitioner failed to demonstrate that Rozwaski's alleged deficient representation caused him any prejudice. The court's conclusion that Conroy's alleged deficiencies did not affect the outcome of the criminal trial necessarily resolved in favor of the respondent, the commissioner of correction, the issue of whether Rozwaski's representation during the prior habeas proceeding was prejudicial.

We agree with the court's conclusion that the petitioner failed to demonstrate that Conroy's alleged deficient performance likely affected the outcome of the criminal trial. This conclusion is dispositive of this appeal. Accordingly, we do not address whether Conroy or Rozwaski rendered effective assistance. Even were this issue not dispositive of the appeal, we note that the lack of findings concerning the effectiveness of the representation provided by either Conroy or Rozwaski prevents us from considering in this appeal issues related to adequacy of representation. "When the record on appeal is devoid of factual findings by the habeas court as to the performance of counsel, it is improper for an appellate court to make its own factual findings." Small v. Commissioner of Correction, 286 Conn. 707, 716,

findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Crump* v. *Commissioner of Correction*, 61 Conn. App. 55, 58, 762 A.2d 491 (2000).

"[A] person convicted of a crime is entitled to seek a writ of habeas corpus on the ground that his attorney in his prior habeas corpus proceeding rendered ineffective assistance." *Lozada* v. *Warden*, 223 Conn. 834, 845, 613 A.2d 818 (1992). When, as here, the petitioner's claim is that prior habeas counsel did not effectively pursue a claim that trial counsel rendered inadequate representation, the following principles apply: "To succeed in his bid for a writ of habeas corpus, the petitioner must prove both (1) that his appointed habeas counsel was ineffective and (2) that his trial counsel was ineffective. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unworkable. . . . Only if the petitioner succeeds in [this] herculean task will he receive a new trial. This new trial would go to the heart of the underlying conviction to no lesser extent than if it were a challenge predicated on ineffective assistance of trial or appellate counsel."

946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

(Citations omitted; internal quotation marks omitted.)
Id., 842–43.

The court appropriately considered whether the evidence presented in this proceeding, if utilized by Conroy at the petitioner's criminal trial, likely would have changed the outcome of the criminal trial. The court made findings of fact concerning the different housing arrangements of Dolphin and the petitioner's codefendants while at the New Haven Correctional Center. The court also found that these individuals could have had contact with each other at the facility. The evidence, and the reasonable inferences to be drawn therefrom, demonstrated that interaction between Dolphin and the petitioner's codefendants during their incarceration was possible, regardless of the existence of the RT-42, prison regulations or the fact that Dolphin was confined to a separate housing facility within the center. The petitioner does not appear to challenge the court's findings of fact with regard to this issue.

The gist of the petitioner's claim is that the court applied an incorrect standard of law, requiring him to prove beyond a reasonable doubt that contact between Dolphin and the petitioner's codefendants was not possible. The court, however, did not couch its analysis in those terms. The court explained that for the petitioner to prevail, "[t]he court must . . . find that had the jury heard the testimony that was elicited during this habeas trial, [it] probably would have had a reasonable doubt about the testimony of Dolphin and the petitioner would have probably been acquitted."[2] The court thereafter

---

[2] The court's language closely resembles the language customarily used by courts to define prejudice in habeas cases when the petitioner's claim is based on the ineffective assistance of counsel. See, e.g., *Thergood* v. *Commissioner of Correction*, 109 Conn. App. 710, 714, 952 A.2d 854 ("[t]o satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" [internal quotation marks omitted]), cert. denied, 289 Conn. 953, 961 A.2d 422 (2008).

stated that "the petitioner has not proven that his codefendants and Dolphin could not have had contact with each other despite the fact that they were in separate housing facilities." Although the court's analysis is brief, a reasonable interpretation of that analysis, viewed as a whole, is that the petitioner failed to demonstrate that contact between these individuals was so unlikely that it would have affected the jury's assessment of Dolphin's testimony. During the habeas proceeding, the petitioner, in attempting to cast doubt on Dolphin's claims, relied on the fact that Dolphin and the petitioner's codefendants lived in separate prison populations. The court rejected that rationale, noting that this fact did not eliminate the opportunity for contact. We reject the petitioner's invitation to interpret the court's finding as an indication that the court viewed the mere possibility of contact, regardless of the likelihood of such contact, as being dispositive or that it had required him to prove his claims beyond a reasonable doubt. "We do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary. . . . Absent a clear indication that the court did not apply [the correct] standard, we conclude that the trial court applied the correct legal standard." (Citation omitted; internal quotation marks omitted.) *State* v. *Cooper*, 227 Conn. 417, 434, 630 A.2d 1043 (1993).

The judgment is affirmed.

In this opinion the other judges concurred.