DAVID R. WILCOX ET AL. *v.* WEBSTER INSURANCE, INC., ET AL.
(SC 18317)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued September 10—officially released November 24, 2009

*Louis N. George*, with whom was *Jeffrey O. McDonald*, for the appellants (named plaintiff et al.).

*Melicent B. Thompson*, with whom was *Aileen R. Wilson*, for the appellee (defendant Acadia Insurance Company).

*Opinion*

ZARELLA, J. The named plaintiff, David R. Wilcox, and the plaintiff Shaun A. Wilcox,[1] appeal[2] from the trial court's dismissal of their claims against the defendant Acadia Insurance Company.[3] The plaintiffs assert that the trial court improperly granted the defendant's motion to dismiss on the ground that the plaintiffs lacked standing.[4] The defendant responds that the trial court properly concluded that the plaintiffs lacked

---

[1] Donna Wilcox also was named as a plaintiff in the complaint. Her claims are solely against the named defendant, Webster Insurance, Inc., and she is not a party to this appeal. We refer to David R. Wilcox and Shaun A. Wilcox collectively as the plaintiffs and individually by their first name and last name.

[2] The plaintiffs appealed to the Appellate Court from the trial court's dismissal of their claims against the defendant Acadia Insurance Company, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The plaintiffs also named Webster Insurance, Inc., as a defendant in their complaint. The motion to dismiss that is the subject of this appeal involved only the plaintiffs' claims against the defendant Acadia Insurance Company. Therefore, Webster Insurance, Inc., is not a party to this appeal. In the interest of simplicity, we refer to Acadia Insurance Company as the defendant throughout this opinion.

[4] The plaintiffs also claim that the trial court improperly denied their motion for reargument and reconsideration of the court's decision to grant the defendant's motion to dismiss. Because we conclude that the plaintiffs have standing, we need not address this claim.

standing and that the trial court's decision should be affirmed on the alternative ground that the plaintiffs' claims against the defendant are moot. We conclude that the plaintiffs have standing to bring their claims against the defendant and that the case is not moot. Accordingly, we reverse the decision of the trial court and remand the case with direction to deny the motion to dismiss and for further proceedings.

The record reveals the following relevant factual allegations and procedural history. Our statement of the facts is taken from the allegations in the revised complaint of July 26, 2007.[5] Although the defendant disputes several of the material allegations, "[a] motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion . . . ." (Internal quotation marks omitted.) *May* v. *Coffey*, 291 Conn. 106, 108, 967 A.2d 495 (2009). When, as in the present case, a motion to dismiss "is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." *Barde* v. *Board of Trustees of Regional Community Colleges*, 207 Conn. 59, 62, 539 A.2d 1000 (1988).

David Wilcox was an owner and managing member of American Crushing and Recycling, LLC (American Crushing), and his son, Shaun Wilcox, also was an owner and member. On or before September, 2004, David Wilcox contacted Webster Insurance, Inc. (Web-

---

[5] We note that the trial court determined that the revised complaint did not comply with the trial court's order permitting the filing of a substitute complaint insofar as it added two new counts of negligence against the defendant. For purposes of deciding the defendant's motion to dismiss, the trial court limited its analysis to counts one, two, five, nine and ten of the revised complaint, which are the only other counts levied against the defendant, and such counts are nearly identical to those in the original complaint. Because this aspect of the trial court's decision has not been appealed, we limit our analysis in the same manner.

ster), an authorized agent of the defendant, to obtain insurance for himself and American Crushing, including liability coverage and umbrella coverage for motor vehicles used by American Crushing. In response to this inquiry, Webster obtained an automobile insurance policy (automobile policy) issued by the defendant with a policy period commencing on September 1, 2004, and ending on September 1, 2005. The automobile policy provided for $1 million of coverage for each accident or loss for liability involving any automobile,[6] and the umbrella policy[7] provided an additional $2 million per accident. David Wilcox was a named insured under the policies,[8] and Shaun Wilcox was insured under the terms of the policies, although not a named insured.

On or before January 3, 2005, an employee of American Crushing contacted Webster and requested that certain items of coverage under the automobile policy be suspended temporarily. On or before March 17, 2005, David Wilcox or a representative of American Crushing contacted Webster and requested that such suspended coverage be reinstated. Webster, acting in its capacity as an authorized agent of the defendant, promised to reinstate coverage. Thereafter, David Wilcox requested a certificate of liability insurance from Webster and the defendant, which they subsequently produced. The certificate of liability insurance represented that $1 million of automobile liability coverage and $2 million in umbrella coverage was in force for "any auto . . . ." David Wilcox made additional requests for and received identical certificates of liability insurance from Webster

---

[6] The plaintiffs allege that "[a]ny [a]uto"; (internal quotation marks omitted); as stated in the automobile policy, included all automobiles owned, leased or otherwise used by any employee or agent of American Crushing.

[7] The umbrella policy also had a policy period from September 1, 2004, to September 1, 2005.

[8] Hereinafter, we refer to the automobile policy and the umbrella policy collectively as the policies.

and the defendant on April 29, May 16, May 19, and May 20, 2005.

On July 29, 2005, a dump truck owned by American Crushing was involved in a motor vehicle accident in Avon. At the time of the accident, all of the premiums due on the policies had been paid. Following the accident, the plaintiffs requested that the defendant defend and indemnify them and American Crushing in connection with any liability or costs incurred as a result of the accident. The defendant did not immediately respond to the plaintiffs. The defendant subsequently denied that there was insurance coverage in effect for the dump truck on the date of the accident and has declined to defend or indemnify the plaintiffs for any potential civil liability that they face or have faced. The plaintiffs allege that, as a result of the defendant's denial of coverage and failure to defend and indemnify them, they have been exposed to civil liability for claims brought by the victims of the accident, or their estates, and have sustained damages including, but not limited to, loss of income and the costs of defending against criminal charges and civil actions.

On March 23, 2007, the plaintiffs filed their original complaint in the present case.[9] The complaint alleges causes of action against the defendant for breach of contract, promissory estoppel, negligent misrepresentation, recklessness, and violations of the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. On May 10, 2007, the defendant filed a motion to dismiss the plaintiffs' claims. In its motion to dismiss, the defendant claimed, inter alia, that the court lacked subject matter jurisdiction over the plaintiffs' claims because the plaintiffs,

---

[9] The plaintiffs filed a revised complaint on July 26, 2007. See footnote 5 of this opinion.

as members of a limited liability company, lacked standing to assert claims of the limited liability company. The defendant further claimed that the right to assert insurance policy claims arising from the accident belonged exclusively to American Crushing. Following a hearing on the matter, the trial court agreed with the defendant and granted the motion to dismiss. In its October 25, 2007 memorandum of decision, the trial court determined that the relevant provisions of the Connecticut Limited Liability Company Act (act);[10] see General Statutes §§ 34-100 through 34-242; were dispositive of the standing issue, and that the act did not permit the plaintiffs "to maintain an action on behalf of American Crushing." Accordingly, the trial court granted the defendant's motion and dismissed the claims. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs first challenge the trial court's conclusion that they lacked standing to bring their claims against the defendant. Specifically, the plaintiffs claim that David Wilcox, as a named insured under the policies, and Shaun Wilcox, as an insured and third party beneficiary under the terms of the policies, have individual standing to assert their claims against the defendant and to enforce the terms of the policies. The plaintiffs further argue that they do not seek to enforce the rights of or to recover damages sustained by American Crushing. Rather, the plaintiffs claim that they seek to enforce

[10] Specifically, the trial court relied on the following relevant provisions: General Statutes § 34-124 (b) ("[a] limited liability company shall have power to and may sue and be sued"); General Statutes § 34-134 ("[a] member or manager of a limited liability company is not a proper party to a proceeding by . . . a limited liability company solely by reason of being a member or manager of the limited liability company"); and General Statutes § 34-186 ("[s]uits may be brought by . . . a limited liability company in its own name").

their individual rights under the policies and to recover damages that they individually have sustained as a result of the defendant's refusal to defend and indemnify them for their individual liabilities stemming from the accident. The plaintiffs therefore argue that the trial court improperly concluded that they lacked standing in light of General Statutes § 34-134.[11] The defendant responds that the trial court properly applied § 34-134 to the plaintiffs' claims and concluded that the plaintiffs lacked standing because they have no individual interests in the policies that are distinct from American Crushing's interests and because the plaintiffs have not established that they have been injured in any manner not attributable to their status as owners and members of American Crushing. We agree with the plaintiffs.

"As a preliminary matter, we set forth the standard of review. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to] grant . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Gerlt* v. *South Windsor*, 284 Conn. 178, 188–89, 931 A.2d 907 (2007).

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § 10-31 (a). [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the

[11] General Statutes § 34-134 provides in relevant part: "A member or manager of a limited liability company is not a proper party to a proceeding by . . . a limited liability company solely by reason of being a member or manager of the limited liability company . . . ."

dispute." (Internal quotation marks omitted.) *May* v. *Coffey*, supra, 291 Conn. 113. "It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 335, 857 A.2d 348 (2004). "Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) *May* v. *Coffey*, supra, 113.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]. Similarly, standing exists to attempt to vindicate arguably protected interests. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and

injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Id., 112.

We conclude that the plaintiffs satisfy the requirements of classical aggrievement and, therefore, have standing to bring their claims against the defendant. First, each of the plaintiffs has demonstrated a specific, personal and legal interest in the policies. "It is axiomatic that an action upon a contract or for breach of a contract can be brought and maintained by one who is a party to the contract sued upon . . . ." (Internal quotation marks omitted.) *Chila* v. *Stuart*, 81 Conn. App. 458, 464, 840 A.2d 1176, cert. denied, 268 Conn. 917, 847 A.2d 311 (2004).[12] This principle applies with equal force to insurance contracts. See, e.g., *Taylor* v. *Mucci*, 288 Conn. 379, 384, 952 A.2d 776 (2008) ("[a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract" [internal quotation marks omitted]); 44A Am. Jur. 2d 392–93, Insurance § 1924 (2003) ("[i]n determining who may sue in actions upon insurance policies, the same principles govern generally as in other contracts").

In the present case, the plaintiffs have alleged, and there is no evidence to the contrary, that David Wilcox is a named insured under the policies.[13] As a named insured, he is a party to the insurance contracts at issue and, therefore, has a specific, personal and legal interest

[12] Cf. *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 579, 833 A.2d 908 (2003) (stating corollary that "[i]t is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract" [internal quotation marks omitted]).

[13] The declarations pages of the automobile policy and the umbrella policy list as "named insured" American Crushing and David Wilcox, in that order. The address listed is that of American Crushing's principal place of business in Bloomfield.

in those contracts. *Schratwieser* v. *Hartford Casualty Ins. Co.*, 44 Conn. App. 754, 758, 692 A.2d 1283 ("[a]s the named insured, [the plaintiff was] a proper party to the action . . . [concerning] the contract of insurance between him and the defendant [insurance company]"), cert. denied, 241 Conn. 915, 696 A.2d 340 (1997).

Similarly, the plaintiffs have alleged that Shaun Wilcox is an insured under the terms of the policies and, therefore, has a specific, personal and legal interest in those policies. First, the umbrella policy provides that members of an insured limited liability company are insureds with respect to the conduct of the limited liability company.[14] Accordingly, because Shaun Wilcox is a member of American Crushing, he is an insured under the terms of the umbrella policy. In addition, Shaun Wilcox *arguably* qualifies as an insured under the terms of the automobile policy on the basis of the plaintiffs' allegations that he is liable for the conduct of American Crushing, including liability arising from his duties as a member and manager thereof.[15] For pur-

---

[14] The umbrella policy provides in relevant part: "SECTION II—WHO IS AN INSURED

"A. If you are designated in the Declarations as:

\* \* \*

"3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the [conduct] of your business. Your managers are insured, but only with respect to their duties as your managers."

The declarations page of the umbrella policy designates American Crushing as a limited liability company.

[15] The automobile policy provides in relevant part: "SECTION II—LIABILITY COVERAGE

"A. Coverage

\* \* \*

"1. Who Is An Insured

"The following are 'insureds':

"a. You for any covered 'auto'.

"b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow . . .

"c. Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

The plaintiffs' claim that Shaun Wilcox is an insured under the automobile policy *arguably* comes within part A 1 c of section II of that policy.

poses of standing, the plaintiffs need only allege a "colorable claim of injury" as "standing exists to attempt to vindicate 'arguably' protected interests." *Maloney* v. *Pac*, 183 Conn. 313, 321 n.6, 439 A.2d 349 (1981). Therefore, although we do not conclude that Shaun Wilcox *definitively* is an insured under the automobile policy, we conclude that the allegations are sufficient to meet the requirements for standing. Accordingly, the plaintiffs may litigate the merits of their claims, including what, if any, coverage Shaun Wilcox has under the automobile policy.

Finally, the plaintiffs claim that Shaun Wilcox is a third party beneficiary of the automobile policy and, therefore, has a specific, personal and legal interest in that policy. "A third party beneficiary may enforce a contractual obligation without being in privity[16] with the actual parties to the contract. . . . Therefore, a third party beneficiary who is not a named obligee in a given contract may sue the obligor for breach." *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 230–31, 654 A.2d 342 (1995). "[T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] . . . ." (Internal quotation marks omitted.) *Wasniewski* v. *Quick & Reilly, Inc.*, 292 Conn. 98, 109, 971 A.2d 8 (2009). "Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, [when] the language is clear and unambiguous it becomes a question of law for the court." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, supra, 232.

---

[16] " 'Privity' in this context refers to 'those who exchange the promissory words or those to whom the promissory words are directed.' " *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 230 n.6, 654 A.2d 342 (1995).

In the present case, the plaintiffs claim that, because Shaun Wilcox is an insured under the terms of the umbrella policy, and because the umbrella policy lists the automobile policy as an "underlying" insurance policy to which it applies, the parties must have intended for Shaun Wilcox to be a third party beneficiary of the automobile policy. Although we do not conclude that Shaun Wilcox *definitively* is a third party beneficiary of the automobile policy, we conclude that the plaintiffs have raised an arguable and colorable claim that he is, and, therefore, he meets the requirements of standing.

The plaintiffs also satisfy the second prong of the test for determining classical aggrievement because they have alleged that their interests in the policies have been injuriously affected by the defendant's actions. Specifically, they have alleged that the defendant has denied coverage and failed to defend or indemnify them for the potential civil liability that they face or have faced as a result of the accident. The plaintiffs allege that, as a result of the defendant's breach of the insurance contracts, negligent misrepresentation and their reliance on the defendant's representations and promises to reinstate coverage, the plaintiffs *individually* have been exposed to civil liability in connection with the accident and have sustained damages including, but not limited to, loss of income from their business and the costs of defending against criminal charges and civil actions. In addition to alleging individual injury, the plaintiffs have substantiated many of these allegations by adducing evidence that each of them has been named individually as a defendant in various lawsuits arising out of the accident.[17] Because we conclude that the

---

[17] We note that, when the plaintiffs filed their complaint, there were no civil actions pending in which Shaun Wilcox was a defendant. This fact does not affect his standing, however, because "[a]ggrievement is established if there is a *possibility*, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Emphasis added; internal quotation marks omitted.) *May* v. *Coffey*, supra, 291 Conn. 112. Moreover, a party ordinarily establishes standing by alleging an "injury [that]

plaintiffs have satisfied the requirements of the test for determining classical aggrievement, they have standing to bring their claims against the defendant.

Notwithstanding the foregoing analysis, the defendant argues that the plaintiffs lack standing in light of General Statutes § 34-134, which provides in relevant part: "A member or manager of a limited liability company is not a proper party to a proceeding by or against a limited liability company solely by reason of being a member or manager of the limited liability company . . . ." The defendant claims that the plaintiffs have no interests in the policies distinct from the interest of American Crushing and that they have not been injured in any manner not attributable to their status as owners or members of American Crushing. The defendant therefore claims that the plaintiffs' causes of action are derivative of those belonging to American Crushing and that § 34-134 applies to this case and bars the plaintiffs' claims. The defendant further contends that, in order for the plaintiffs to have standing, this court must assume that the plaintiffs have no connection to American Crushing with respect to their exposure to liability arising from the accident. We disagree.

The express terms of § 34-134 reveal that that statute has no applicability to the present case. Quite simply, this case is not "a proceeding by or against a limited liability company" because American Crushing is not a party to the present action. General Statutes § 34-134.

---

he has suffered *or is likely to suffer* . . . ." (Emphasis added; internal quotation marks omitted.) *Burton* v. *Commissioner of Environmental Protection*, 291 Conn. 789, 802, 970 A.2d 640 (2009). In the present case, the plaintiffs established aggrievement because, at the time the plaintiffs filed their complaint, Shaun Wilcox had been *exposed* to civil liability from the accident. As a result of this exposure, there was a "possibility" that his interests in the automobile policy were adversely affected; (internal quotation marks omitted) *May* v. *Coffey*, supra, 112; and that he was "likely to suffer" injury due to the defendant's denial of coverage. (Internal quotation marks omitted.) *Burton* v. *Commissioner of Environmental Protection*, supra, 802.

In addition, the plaintiffs do not allege that they have standing "solely by reason of being . . . member[s] or manager[s] of [American Crushing] . . . ." General Statutes § 34-134. As we previously noted, the plaintiffs have individual interests in the policies for purposes of standing because David Wilcox is a named insured under the policies, and the plaintiffs have raised a colorable claim that Shaun Wilcox is an insured under the terms of the policies and also a third party beneficiary under the automobile policy. Although the defendant emphatically contends otherwise, such an argument is insufficient to prevail on a motion to dismiss. Similarly, just because the defendant has characterized the injuries and claims of the plaintiffs as being derivative of those belonging to American Crushing, it does not alter their true character as being individual claims. As we noted previously, the plaintiffs' complaint alleges that *the plaintiffs*, not solely American Crushing, have been exposed to civil liability as a result of the accident. In determining a motion to dismiss, it is the allegations in the complaint that determine the facts, not the defendant's *characterization* of those allegations. See, e.g., *May* v. *Coffey*, supra, 291 Conn. 108 ("[in] review[ing] the trial court's decision to grant a motion to dismiss, we take the facts to be those alleged in the complaint" [internal quotation marks omitted]).

Finally, there is no basis in law for the defendant's contention that, in order for the plaintiffs to have standing, they must have no connection to American Crushing with respect to their exposure to liability arising from the accident. The defendant has failed to cite to, and we are unaware of, any legal authority requiring such separation.[18] When a party meets the requirements

---

[18] Although the defendant has failed to cite to any authority to support this argument, the defendant has cited to a nonbinding decision of the Superior Court and to cases from other jurisdictions for the irrelevant and undisputed proposition that members of a limited liability company do not have standing to bring claims solely belonging to the limited liability company. See *Elecor, LLC* v. *King*, Superior Court, judicial district of New

of the test for determining classical aggrievement, it is irrelevant for purposes of standing whether such party also is a member of a limited liability company that may or may not have related claims of its own. Because the plaintiffs have demonstrated individual interests in the policies and have alleged individual injuries, the plaintiffs have standing, and § 34-134 has no applicability to the plaintiffs' claims against the defendant.

## II

We next address the defendant's claim that the trial court's decision should be affirmed on the alternative ground that the plaintiffs' claims are moot.[19] The defendant claims that no practical relief can be afforded to the plaintiffs because the United States District Court for the District of Connecticut has determined that no liability coverage existed under the policies at issue for American Crushing's dump truck at the time of the accident. See *Acadia Ins. Co.* v. *American Crushing & Recycling, LLC*, 475 F. Sup. 2d 168, 173–74 (D. Conn. 2007) (ruling on motion for summary judgment in interpleader action brought by Acadia Insurance Company against American Crushing and other potential claimants). Accordingly, the defendant argues that the plaintiffs' claims are moot. We disagree.

"Mootness is a question of justiciability that . . . implicates [this] court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) *State* v.

Haven, Docket No. CV-06-5006235-S (December 5, 2007); see also *Carey* v. *Howard*, 950 So. 2d 1131, 1135–36 (Ala. 2006); *Vectren Energy Marketing & Service, Inc.* v. *Executive Risk Specialty Ins. Co.*, 875 N.E.2d 774, 778–79 (Ind. App. 2007). These cases are inapposite because the plaintiffs in the present case are not seeking to enforce the rights of or to recover damages sustained by American Crushing, but, rather, are seeking to enforce their *individual* rights under the policies and to recover damages that they *individually* have sustained.

[19] The defendant raised this argument in its motion to dismiss. The trial court declined to address it, however, because the court determined that the plaintiffs lacked standing.

*Preston*, 286 Conn. 367, 373, 944 A.2d 276 (2008). "Mootness . . . rais[es] a question of law over which we exercise plenary review." (Internal quotation marks omitted.) *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, 291 Conn. 242, 255, 967 A.2d 1199 (2009). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if an appellate court cannot grant the appellant any practical relief through its disposition of the merits . . . ." (Citation omitted; internal quotation marks omitted.) Id.

At the outset, it appears that the defendant has confused the concepts of collateral estoppel and mootness. These concepts are separate and distinct. Collateral estoppel is an affirmative defense that may be waived if not properly pleaded. E.g., *Carnese* v. *Middleton*, 27 Conn. App. 530, 537, 608 A.2d 700 (1992) ("[c]ollateral estoppel, like res judicata, must be specifically pleaded by a defendant as an affirmative defense"); see also *Sydoriak* v. *Zoning Board of Appeals*, 90 Conn. App. 649, 657, 879 A.2d 494 (2005) (collateral estoppel claim deemed waived due to failure to plead it as special defense); cf. Practice Book § 10-50 ("res judicata must be specially pleaded" as defense). Mootness, on the other hand, is a justiciability doctrine that implicates this court's subject matter jurisdiction; see, e.g., *State* v. *Preston*, supra, 286 Conn. 373; and, thus, cannot be waived and can be raised at any time. See, e.g., *Burton* v. *Commissioner of Environmental Protection*, supra, 291 Conn. 802 ("[t]he requirement of subject matter jurisdiction cannot be waived . . . and can be raised at any stage of the proceedings" [internal quotation

marks omitted]). "Unlike mootness, the doctrine of collateral estoppel does not implicate a court's subject matter jurisdiction. . . . Even when applicable, therefore, collateral estoppel does not mandate dismissal of a case." (Citations omitted.) *State* v. *T.D.*, 286 Conn. 353, 360 n.6, 944 A.2d 288 (2008).

"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel . . . prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties [or those in privity with them] upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) *Birnie* v. *Electric Boat Corp.*, 288 Conn. 392, 405, 953 A.2d 28 (2008). "[A]lthough most defenses cannot be considered on a motion to dismiss, a trial court can properly entertain a . . . motion to dismiss that raises collateral estoppel grounds." (Internal quotation marks omitted.) *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 311, 934 A.2d 827 (2007), cert. denied, 285 Conn. 907, 908, 942 A.2d 415, 416 (2008).

In the present case, the defendant argues that the plaintiffs should be bound by the federal District Court's determination that no liability coverage existed for the dump truck at the time of the accident. This is a collateral estoppel claim, not a mootness claim. We are unable to adjudicate whether collateral estoppel applies in this case, however, because the record is devoid of the factual findings that are essential to the resolution

of this claim.[20] See, e.g., *Stevenson* v. *Commissioner of Correction*, 112 Conn. App. 675, 683 n.1, 963 A.2d 1077 ("[w]hen the record on appeal is devoid of factual findings . . . it is improper for an appellate court to make its own factual findings" [internal quotation marks omitted]), cert. denied, 291 Conn. 904, 967 A.2d 1221 (2009); see also *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 405 n.10, 973 A.2d 1229 (2009) ("the function of an appellate court is to review findings of fact, not make factual findings" [internal quotation marks omitted]). For example, factual findings regarding the following issues would be relevant in this case: (1) whether the plaintiffs had sufficient notice of the federal court action;[21] (2) whether the plaintiffs could have intervened in that action; and (3) whether the plaintiffs' interests were adequately represented in that action.[22] We can con-

---

[20] Even if we could adjudicate the issue of collateral estoppel and were to hold that the plaintiffs are collaterally estopped from asserting their breach of contract claim against the defendant, this claim still would not be moot. Instead, the plaintiffs' claim simply would be barred by the doctrine of collateral estoppel. Stated another way, the applicability of the doctrine of collateral estoppel, like the applicability of any other affirmative defense, does not *lead to* mootness. Rather, collateral estoppel and mootness are separate and distinct grounds on which a claim may be dismissed.

The defendant's confusion appears to lie in the justiciability requirement that "the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Moraski* v. *Connecticut Board of Examiners of Embalmers & Funeral Directors*, supra, 291 Conn. 255. The defendant claims that if collateral estoppel applies, then no practical relief will be available to the plaintiffs, and, therefore, the plaintiffs' claims are moot. The problem with this analysis is that it suggests that the jurisdictional issue of mootness must be decided *after* and *as a consequence of* a favorable determination on the merits of the defendant's affirmative defense.

[21] Notice is disputed because, although American Crushing was a party to the federal court action, the plaintiffs were not individual parties to that action. The plaintiffs claim that this is significant because a receiver was in control of American Crushing when the federal action was initiated and pending, and the plaintiffs had no power or control over the company. Accordingly, the plaintiffs claim that any notice sent to American Crushing's address was insufficient to apprise them of the federal action.

[22] "[T]he 'crowning consideration' in collateral estoppel cases . . . [is] that the interest of the party to be precluded must have been sufficiently represented in the prior [proceeding] so that the application of collateral

clude, however, on the basis of the current state of the record before us, that the plaintiffs' claims are not moot because a determination of the controversy in the plaintiffs' favor could result in practical relief to the plaintiffs.

The decision is reversed and the case is remanded with direction to deny the defendant's motion to dismiss and for further proceedings according to law.

In this opinion the other justices concurred.

estoppel is not inequitable. . . . A [proceeding] in which one party contests a claim against another should be held to estop a third person only when it is realistic to say that the third person was fully protected in the first [proceeding]." (Citation omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 818, 695 A.2d 1010 (1997). "The reason for the rule lies in the deep-rooted fundamental doctrine of the law that a party to be affected by a personal judgment must have a day in court and an opportunity to be heard on the matter." (Internal quotation marks omitted.) *Windsor Locks Associates* v. *Planning & Zoning Commission*, 90 Conn. App. 242, 254, 876 A.2d 614 (2005).

In the present case, the plaintiffs claim that they were not adequately represented because American Crushing was represented and controlled by its receiver during the pendency of the federal action and did not oppose the motion for summary judgment filed by Acadia Insurance Company in that action. The plaintiffs claim, therefore, that the District Court, in ruling on the summary judgment motion, had no evidence before it as to the numerous certificates of liability insurance issued by the defendant and was not aware of the plaintiffs' allegation in the present case that the plaintiffs contacted Webster to reinstate coverage on or before March 17, 2005.